Kevin O'LEARY, Anchorage Daily News, Anchorage Times, State of Alaska, Stephen E. Branchflower, and Dwayne W. McConnell, Appellants,

v.

SUPERIOR COURT, THIRD JUDICIAL DISTRICT, and the Honorable Brian C. Shortell, as Presiding Judge, Appellees.

In the Matter of the Grand Jury for the Third Judicial District at Anchorage for the Term of Proceedings in January, 1990.

In re SPECIAL GRAND JURY.

Nos. S–4105, S–4131 to S–4134 and S–4159.

Supreme Court of Alaska.

Aug. 9, 1991.

Clark Reed Nichols, James N. Leik, Perkins Coie, Anchorage, for appellant O'Leary.

D. John McKay, Middleton, Timme & McKay, Anchorage, for appellant Anchorage Daily News.

Theodore E. Fleischer, Cynthia L. Ducey, Guess & Rudd, Anchorage, for appellant Anchorage Times.

Randy M. Olsen, Asst. Atty. Gen., Fairbanks, Douglas B. Baily, Atty. Gen., Juneau, for appellants McConnell and Branchflower.

David Mannheimer, Asst. Atty. Gen., Anchorage, Douglas B. Baily, Atty. Gen., Juneau, for appellant State of Alaska.

James P. Doogan, Asst. Atty. Gen., Fairbanks, Douglas B. Baily, Atty. Gen., Juneau, for the Grand Jury.

James H. McComas, Schleuss & McComas, Howard S. Trickey, Jermain, Dunnagan & Owens, P.C., Anchorage, John B. Patterson, Kelly & Patterson, William F. Dewey, William P. Bryson, Anchorage, for interested parties.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Chief Justice.

These appeals concern an investigative grand jury report which was subject to judicial review under Criminal Rule 6.1. The issue raised in *O'Leary v. Superior Court*, No. S–4105, is whether Criminal Rule 6.1 violates article I, section 8 of the Alaska Constitution. We answer that it does not.

The issue presented in *In re Special Grand Jury*, Nos. S–4131–34, 4159, is whether the superior court erred in ordering the entire report released. After oral argument in this case we ordered that only the "Findings, Recommendations and Conclusions" section of the report be immediately released. The names of the interested parties were deleted from that section. We have thus, implicitly, ruled that the superior court erred in ordering the entire report released. In this opinion we explain the reasons for our ruling. In addition, we order that much of the remainder of the report be released.

## I. BACKGROUND

At the request of Alaska's Attorney General, the grand jury for the third judicial district began an investigation into the conduct of the Anchorage School District, the Anchorage Police Department and the Anchorage District Attorney's Office, relating to the investigation of a Bartlett High School teacher's sexual relationships with students.

On March 5, 1990, the grand jury issued Part I of its report which identifies deficiencies in certain statutes and policies regarding the reporting and investigation of sexual misconduct with school children. It contains recommendations for statutory and policy changes. The grand jury also explained that it had prepared a second part of its report which addressed the actions of the school district, the police department and the district attorney's office and of individuals employed by those organizations. Part II of the report was submitted to the superior court on March 15, 1990.

On March 19, 1990, the court issued an order finding that Part II meets the requirements of Criminal Rule 6.1(a)(1) and (2).[1] The court also found the requirement of 6.1(b) that "the publication of the report will not improperly infringe upon the constitutional right of any person" was satisfied. However, it held that the procedures specified in 6.1(c) and (d) (judicial review if report adversely reflects on identifiable person) would be required since the report might reflect adversely on named or identifiable individuals.

In compliance with 6.1(c) and (d) the court identified individuals whose activities were discussed in Part II, and provided them with copies of the report. Under 6.1(c)(2) any person named or identifiable has an opportunity to request a hearing, and many of them did so. They are referred to collectively in this opinion as "interested parties."

In the course of the 6.1 proceedings the court reconvened the grand jury in order to give it an opportunity to consider the written responses and testimony from certain interested parties.[2] In response to this evidence the grand jury revised Part II of its original report and requested that it be

---

1. Criminal Rule 6.1 is set forth in its entirety in the appendix to this opinion.

2. This action was authorized under Criminal Rule 6.1(c)(5):

The court may request that the grand jury consider further evidence as to the named or otherwise identifiable person.

published. On August 7, 1990, the court issued a final order concluding that Part II of the report satisfied all requirements for release and ordered that it be published on August 21, 1990. The court also ordered, however, that publication would be stayed automatically if any interested party filed a notice of appeal before that time.[3] The interested parties have appealed.

While the superior court was still conducting judicial review of Part II under Rule 6.1, appellant Kevin O'Leary, Chief of the Anchorage Police Department, filed an application for original relief in this court, claiming that Criminal Rule 6.1 was unconstitutional. The application was remanded to the superior court for decision. Two newspapers, the Anchorage Daily News and the Anchorage Times, intervened at the superior court level and made similar claims. The superior court structured the proceedings to maintain the confidentiality of Part II of the report. The grand jury and two prosecutors, Stephen Branchflower and Dwayne McConnell, also joined O'Leary in arguing that Criminal Rule 6.1 is unconstitutional. The interested parties opposed O'Leary's application.

On August 1, 1990, the court issued an order ruling that "the applications of all parties to hold Criminal Rule 6.1 unconstitutional are denied." From this order O'Leary has appealed. The newspapers, the prosecutors and the grand jury join in this appeal.

## II. CRIMINAL RULE 6.1 IS CONSTITUTIONAL

### A.

Criminal Rule 6.1 provides a procedure for judicial review of grand jury reports before they are published. Under the rule, reports that may damage the reputation of a person are subject to review to determine whether (1) they concern the public safety and welfare, (2) they improperly infringe upon a constitutional right of any person, and (3) the factual findings they contain are supported by substantial evidence. In addition, interested parties may be afforded an opportunity to present evidence to the grand jury and to append an explanation to the report when it is published. The question presented is whether these procedures violate the anti-suspension clause of article I, section 8 of the Alaska Constitution. Article I, section 8 provides:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the armed forces in time of war or public danger. Indictment may be waived by the accused. In that case the prosecution shall be by information. The grand jury shall consist of at least twelve citizens, a majority of whom concurring may return an indictment. The power of grand juries to investigate and make recommendations concerning the public welfare or safety shall never be suspended.

The appellants' arguments that Criminal Rule 6.1 violates the anti-suspension clause are generally conclusory in nature. O'Leary states that the anti-suspension clause "leaves no room for interpretation that results in any restraint or censorship on the grand jury investigatory and reporting functions"; that the grand jury is not a part of the judicial branch of government; and that it has "an unfettered power to investigate and make recommendations." None of these conclusions are supported by case authority.

O'Leary's contention that the grand jury is not a part of the judicial branch of government seems plainly wrong. Grand juries have traditionally been viewed as an arm of the court system.[4] The proceedings of our Constitutional Convention demon-

---

**3.** Automatic stay pending appeal is provided for under Rule 6.1(d)(1).

**4.** *See Levine v. United States*, 362 U.S. 610, 617, 80 S.Ct. 1038, 1043, 4 L.Ed.2d 989 (1960) ("The grand jury is an arm of the court and its in camera proceedings constitute a 'judicial inquiry.'"); *Brown v. United States*, 359 U.S. 41, 49, 79 S.Ct. 539, 545–46, 3 L.Ed.2d 609 (1959)

("A grand jury is clothed with great independence in many areas, but it remains an appendage of the court, powerless to perform its investigative function without the court's aid...."); *Cobbledick v. United States*, 309 U.S. 323, 327, 60 S.Ct. 540, 542, 84 L.Ed. 783 (1940) ("The Constitution itself makes the grand jury a part of the judicial process."); *United States v. Stevens*, 510

strate that the framers of the Alaska Constitution shared this understanding.[5]

■ O'Leary's argument that the grand jury is not subject to "any restraint" and has "unfettered power" is also unsupported by authority. The argument, if correct, would mean that the grand jury could operate lawlessly, ignoring evidentiary privileges as well as the constitutional rights of those appearing before it. Such a position is supported by no case law of which we are aware. It is refuted by case law from the state of New York construing an analogous provision of the New York Constitution.

Section 6 of article I of the New York Constitution provides:

> The power of grand juries to inquire into the wilful misconduct in office of public officers, and to find indictments or to direct the filing of informations in connection with such inquiries, *shall never be suspended or impaired by law.*[6] (Emphasis added.)

The New York courts have held nonetheless that the grand jury's power to investigate is subject to various legal controls:

> [T]hose powers although extensive, are not unlimited. For example, [the grand

F.2d 1101, 1106 (5th Cir.1975) ("[A] grand jury is·essentially an agency of the court, and exercises its powers under the authority and supervision of the court."); *People v. Superior Court of Santa Barbara County,* 13 Cal.3d 430, 119 Cal. Rptr. 193, 198, 531 P.2d 761, 766 (1975) (en banc) ("[T]he grand jury serves as an integral part of the court system."). *But see United States v. Chanen,* 549 F.2d 1306, 1312 (9th Cir. 1977) ("The grand jury is ... not relegated by the Constitution to a position within any of the three branches of the government.").

5. According to Delegate Ralph Rivers, "[T]he grand jury is essentially a part of the judiciary process and is called by the courts." 2 Proceedings of the Alaska Constitutional Convention (Proceedings) 1281 (January 5, 1956). The original committee proposal concerning the power of grand juries stated that a grand jury could be convened by a "judge of a court having the power to try and determine felonies." This was changed after other amendments had been adopted and the federal model was substituted for this language. Proceedings at 1339.

6. This clause served as the model for section 16 of article I of the Missouri Constitution of 1945 which provides:
> That a grand jury shall consist of twelve citizens, any nine of whom concurring may find an indictment or a true bill: provided, that no grand jury shall be convened except upon an order of a judge of a court having the power to try and determine felonies; but when so assembled such grand jury shall have power to investigate and return indictments for all character and grades of crime; and that *the power of grand juries to inquire into the willful misconduct in office of public officers, and to find indictments in connection therewith, shall never be suspended.* (Emphasis added).

Weinstein & Shaw, *Grand Jury Reports—A Safeguard of Democracy,* 1962 Wash.U.L.Q. 191, 196–198, n. 28. The Missouri clause, in turn, was proposed by the Preamble & Bill of Rights Committee of the Alaska Constitutional Convention for inclusion in the Alaska Constitution. Proceedings at 1325. After various amendments only the anti-suspension language was actually incorporated in the Alaska Constitution.

In both New York and Missouri, indictments are routinely reviewed and dismissed if the reviewing court finds that the defendant's constitutional rights have been violated. *See, e.g., State v. Garrett,* 627 S.W.2d 635 (Mo.1982) (en banc) (indictment challenged on the grounds that it did not contain all the essential elements of the offense and that the procedures by which the grand jury and its foreman were selected were unconstitutional); *State v. Tressler,* 503 S.W.2d 13 (Mo.1973) (indictment reviewed on grounds that the Missouri grand jury system deprived defendant of his constitutional right of confrontation and his right to presence of counsel); *State v. Easter,* 661 S.W.2d 644 (Mo.App. 1983) (indictment reviewed to determine whether prosecutor abused the grand jury subpoena power or breached duty to present exculpatory evidence); *State v. Halliburton,* 531 S.W.2d 554 (Mo.App.1975) (criminal rule requires the court to evaluate the sufficiency of the indictment and indictment may be dismissed for vagueness if it does not advise defendant of the constituent facts necessary to acquaint him with the particular charges); *People v. Bacote,* 143 Misc.2d 535, 541 N.Y.S.2d 305 (Sup.Ct.1989) (indictments dismissed because the prosecutor gave the grand jury an erroneous instruction); *People v. Guzman,* 137 Misc.2d 129, 520 N.Y.S.2d 117 (Sup.Ct. 1987) (indictments reviewed and dismissed because prosecutor failed to reread appropriate instructions at time grand jury was considering particular case); *People v. Ali,* 137 Misc.2d 812, 523 N.Y.S.2d 334 (Sup.Ct.1987) (indictments found to be defective on grounds that grand jury was presented with insufficient evidence to sustain charges and that district attorney failed to instruct grand jury on possible defense); *People v. Williams,* 136 A.D.2d 132, 526 N.Y.S.2d 581 (1988) (indictments dismissed on ground that grand jury inadequately instructed).

jury] may not violate a valid privilege, whether derived from the Constitution, statutes or the common law. Additionally, its powers to compel testimony and the production of evidence must *"be exercised in accordance with the procedural and evidentiary rules* laid down in the Criminal Procedural Law and other statutes."

*Stern v. Morgenthau,* 62 N.Y.2d 331, 476 N.Y.S.2d 810, 812, 465 N.E.2d 349, 351 (1984) (emphasis added) (citation omitted); *see also Beach v. Shanley,* 62 N.Y.2d 241, 476 N.Y.S.2d 765, 465 N.E.2d 304 (1984) (grand jury may not subpoena TV reporter to obtain testimony as to reporter's source because of statutory "shield law").

In *Beach,* the New York Court of Appeals expressed and rejected an argument as broad as O'Leary's concerning New York's analogous constitutional provision:

> [U]nder respondent's argument, all statutory restrictions on a grand jury's ability to investigate public officers would be invalid. Thus, the spousal, attorney-client, physician-patient, clergy, psychologist, and social worker privileges would all be ineffective. Similarly, a grand jury investigating corruption would be able to give complete immunity to private citizens who have engaged in bribery or extortion, regardless of a prosecutor's desire to obtain waivers. Finally, to the extent that the normal rules of evidence are applicable to grand juries, a question might be raised as to their force when they operate to "impair" an investigation of a public officer.

*Beach,* 476 N.Y.S.2d at 772, 465 N.E.2d at 311 (footnote and citations omitted). The court noted that the New York Constitutional Convention was prompted to adopt its anti-suspension clause because "at a special session of the [Pennsylvania] Legislature a statute was adopted suspending the grand jury investigation into a public official, and depriving the grand jury of the power to act in the matter." *Beach,* 476 N.Y.S.2d at 771, 465 N.E.2d at 310.[7] The

New York court held that the objective of the anti-suspension clause was to prevent legislation which deprived the grand jury of authority to act.

Implied in the majority's opinion in *Beach* and expressed in the concurring opinion of Judge Wachtler is the conclusion that had the reporter's privilege been found to have been of constitutional magnitude under the state constitution the privilege would have even more clearly been entitled to recognition notwithstanding the anti-suspension clause.

New York's anti-suspension language also does not prevent a court from editing an indictment if the goal is the protection of a constitutional right. In *People v. Cirillo,* 100 Misc.2d 527, 419 N.Y.S.2d 820 (1979), the defendant was charged in an indictment with three counts of perjury. He moved to amend the indictment seeking to strike the phrases "a narcotics violator" and "the narcotics violator" replacing each with his name. He asserted that the phrases were highly prejudicial and inflammatory and that their use in the indictment which was to be read to the petit jury "was in effect a flag that the said defendant was a criminal before even one scintilla of evidence was presented to the jury." While recognizing that it had no statutory authority to amend an indictment on a defendant's motion, the court, nonetheless, ruled that it inherently has this power.

> The courts have exercised their power to set aside and quash indictments even in the absence of legislative grant when it appears to be founded upon a lack of evidence or involving illegal and incompetent testimony. This power is based upon the inherent right and duty of the courts to protect the citizen in those circumstances involving a substantial invasion of his constitutional rights.
>
> . . . .
>
> Every court has inherent power to do all things reasonably necessary for the ad-

---

7. The framers of the Missouri Constitution drew on the same example and on that of Louisiana under Governor Huey Long where, according to the speaker, "the grand jury and all other agen-cies charged with the investigation of public officials were abolished." Weinstein, *supra,* 62 Wash.U.L.Q. at 197 n. 28.

ministration of justice within the scope of its jurisdiction.

*Id.,* 419 N.Y.S.2d at 823–24 (citations omitted). Although the court did not specifically discuss the New York Constitution's non-suspension language, it did state,

> [T]here is no law, constitutional or otherwise, proscribing the power of the court on its own motion to permit the defendant's application, nor any interdiction against the striking of a portion of the indictment.

*Id.,* 419 N.Y.S.2d at 825.

### B.

■ Criminal Rule 6.1 is intended to guard against violations of the Alaska Constitution by a grand jury. Review to determine whether a report concerns the public safety or welfare [8] recognizes that grand jury reports are limited by article I section 8 to "recommendations concerning the public welfare or safety." The review under subsection (b)(2) to determine whether publication would improperly infringe on the constitutional right of any person is explicitly constitutionally based.

■ Reputation interests are entitled to a measure of protection under the due process clauses of the fourteenth amendment and of the Alaska Constitution.[9] In *Wisconsin v. Constantineau,* 400 U.S. 433, 436–37, 91 S.Ct. 507, 509–10, 27 L.Ed.2d 515 (1971), the Supreme Court wrote:

> [S]ome state and federal administrative procedures are summary by reason of necessity or history. Yet certainly where the State attaches "a badge of infamy" to the citizen, due process comes into play. . . .
>
> Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.

Similar statements have been made in the grand jury context: "The courts have recognized [that injury to one's good name and reputation and impairment of one's ability to obtain employment] are substantial and legally cognizable interests entitled to constitutional protection against official governmental action that debases them." *United States v. Briggs,* 514 F.2d 794, 797 (5th Cir.1975). In *Briggs* the issue was whether individuals named by the grand jury as co-conspirators who were not indicted suffered any injury protected by the due process clause of the fourteenth amendment. The government had argued that "one's interests are not adversely affected to any extent by being publicly branded as a felon so long as he is not named as a defendant," and "if appellants have suffered injury it is at the hands of only the news media to whom they should repair for relief." *Id.* at 799. The court rejected these arguments and held that the grand jury's actions violated the fourteenth amendment. *See also United States v. Chadwick,* 556 F.2d 450, 450 (9th Cir.1977) (per curiam) ("charging appellant with the offense without making him a defendant was beyond the authority of the grand jury and a denial of due process"); *Application of United Electrical, Radio & Machine Workers,* 111 F.Supp. 858, 867 (S.D.N.Y.1953) ("[A] man should not be subject to a quasi-official accusation of misconduct which he cannot answer in an authoritative forum. The Grand Jury . . . when it issues such reports, is imposing the punishment of public reprimand. . . .").

We have held that review of the evidentiary basis for government action is an essential part of due process.

> The review of factual determinations becomes a review to find whether the administrative decision has passed beyond the lowest limit of the permitted zone of reasonableness to become capricious, arbitrary or confiscatory.

*K & L Distribs. v. Murkowski,* 486 P.2d 351, 358 (Alaska 1971).

---

**8.** *See* Criminal Rule 6.1(a)(1) and (b)(1).

**9.** Article I, section 7 provides:
No person shall be deprived of life, liberty, or property, without due process of law. The right of all persons to fair and just treatment in the course of legislative and executive investigations shall not be infringed.

Although we suggested in *K & L Distribs.* that this was a lower standard of review than the substantial evidence standard, the difference, if any, seems more theoretical than real. Substantial evidence is evidence that, in light of the whole record, a reasonable mind would accept as adequate to support the conclusion at issue. *Burgess Construction Co. v. Smallwood,* 698 P.2d 1206, 1210 (Alaska 1985). Thus, evidence which passes the *K & L Distribs.* test, that which is above the "lowest limit of the permitted zone of reasonableness," would seem to also pass the substantial evidence test.

Moreover, the language of the sentence containing the anti-suspension clause implies that there must be an evidentiary basis for the grand jury's recommendations.

> The section links the grand jury's investigating and reporting powers. It does not empower the grand jury to make recommendations in the abstract or based upon speculation. The grand jury must base its recommendation upon the results of its investigation. If the investigation does not disclose evidence sufficient to support the conclusions and recommendations, the court should not publish the report.

Note, *The Reportorial Power of the Alaska Grand Jury,* 3 Alaska L.Rev. 295, 325–26 (1986).

Thus the requirement of Criminal Rule 6.1 that recommendations be based on substantial evidence elicited in the course of the grand jury's investigation is based both on due process considerations and on the connection between the investigation and the recommendation made in article I, section 8 of our constitution.

### C.

■ In our view, the anti-suspension clause does not prohibit reasonable procedural rules governing the issuance of grand jury reports.[10] In 1955 and 1956 when the framers of the Alaska Constitution met, the power of grand juries to issue reports independent of indictments was a subject which was vigorously debated nationally.[11] The majority view was that such reports were not permissible.[12] The framers of the Alaska Constitution desired to unambiguously place Alaska among those states which recognized the grand jury's power to recommend without indicting and to prevent this power from being abrogated. This is the manifest purpose of the anti-suspension clause.[13] There is, however, nothing in the convention debates which suggests that the delegates intended the grand jury to operate in a legal vacuum when exercising its power to investigate and recommend.

Grand juries are an arm of the court system. As such, their operations are governed by the rules of administration, practice and procedure which the supreme court is constitutionally empowered to promulgate under article IV, section 15 of the Alaska Constitution.[14] *See* Criminal Rule 6 (governing convening and discharge of grand juries and proceedings before grand juries). In 1988 we promulgated Criminal Rule 6.1 following recommendations by the judicial council and the standing committee on criminal rules. In mak-

---

**10.** At the time the clause was adopted territorial courts routinely reviewed grand jury indictments for compliance with law. *See United States v. Larson,* 125 F.Supp. 360 (D.Alaska 1954) (indictment dismissed on the ground that it did not state an offense); *United States v. Bell,* 108 F.Supp. 777 (D.Alaska 1952) (indictment dismissed because it did not state facts sufficient to constitute an offense against the United States).

**11.** *See e.g.,* Comment, *Constitutional Law—Judicial Powers—Legality of the Grand Jury Report,* 52 Mich.L.Rev. 711 (1954).

**12.** *Id.* at 723; *Application of United Electrical, Radio & Machine Workers,* 111 F.Supp. 858, 866 (S.D.N.Y.1953).

**13.** *See supra* notes 6 and 7 and accompanying text.

**14.** Article IV, section 15 provides:
The supreme court shall make and promulgate rules governing the administration of all courts. It shall make and promulgate rules governing practice and procedure in civil and criminal cases in all courts. These rules may be changed by the legislature by two-thirds vote of the members elected to each house.

ing its recommendation, the council published a comprehensive and scholarly report, *The Investigative Grand Jury in Alaska* (1987), which reviewed the history of the grand jury and its investigative and reporting powers. The council study was requested by the Alaska State Senate in 1985.[15] The council concluded that procedures like those contained in Criminal Rule 6.1 were needed to achieve a proper balance between the values inherent in the grand jury's investigative and recommending function on the one hand and the constitutional rights of individuals on the other. The council concluded:

> While safeguards are needed, the grand jury, as a citizens' body, serves a valuable function in its investigative role. A proper balance between the grand jury's reporting power and other constitutionally-protected rights of individuals can be achieved through the development of procedures that provide: (a) due process protections for individuals named or referred to in reports; (b) judicial review; and (c) guidelines for the publication and dissemination of reports.[16]

The council also stated:

> Basic fairness and constitutional due process require that persons identified in grand jury reports be provided with certain protections not currently specified by Alaska law. . . .

> If the report reflects adversely on a person who is named in the report or whose identity can be determined in the report: [the council recommends] (1) that the report be supported by substantial evidence, (2) that it be related to the public welfare or safety, and (3) that it not infringe upon any protected rights or liberties of that person.

> . . . .

> No guidelines, statutes or case law presently exist in Alaska to provide standards for judicial review of grand jury reports. Other than the constitutional requirement that the report address some aspect of "the public welfare or safety", judges have no additional guidance in reviewing the subject matter of reports or the circumstances under which a report should be issued.[17]

In promulgating Criminal Rule 6.1, we agreed with the council's conclusion that rules governing the exercise of the grand jury's investigative and reporting function were necessary in order to ensure fundamental fairness to those whose reputations might unjustifiably be injured by a grand jury report and to ensure that such reports are issued in compliance with constitutional requirements. In reaching this conclusion, we are by no means alone. All the commentators of whom we are aware who speak to the subject express the view that procedural limitations are desirable, or es-

**15.** Alaska Judicial Council, *The Investigative Grand Jury in Alaska* App. A.1 (1987) (quoting Senate Resolve No. 4 First Special Session, 1985). The resolve language read:

> BE IT RESOLVED that the Senate respectfully requests the Judicial Council to study use of the power of the grand jury to investigate and make recommendations and that the council make recommendations to the supreme court and the legislature to assure effective and proper use of that power with protective safeguards to protect abuse and assure basic fairness; and be it
> FURTHER RESOLVED that the Senate respectfully requests the Judicial Council to consider a possible amendment to the State Constitution for presentation to the voters for ratification concerning the need to strengthen the grand jury system consistent with due process and standards established through publications including but not limited to ma-

terials published by the National Institute of Justice, United States Department of Justice, *Grand Jury Reform: A Review of Key Issues, 1983.*

The senate's attention to the issue of the power of grand juries to investigate and make recommendations was brought in focus by a July 1, 1985 First Judicial District Grand Jury Report recommending that the senate begin impeachment proceedings against Governor Sheffield. The rules committee of the senate held impeachment hearings, but did not adopt articles of impeachment. The episode is discussed in Note, *The Reportorial Power of the Alaska Grand Jury,* 3 Alaska L.Rev. 295 (1986) and in Stern, *Revealing Misconduct by Public Officials Through Grand Jury Reports,* 136 U.Pa.L.Rev. 73, 79–82, 115–25 (1987).

**16.** Alaska Judicial Council, *The Investigative Grand Jury in Alaska* ii (1987).

**17.** *Id.* at ii–iii.

sential, to protect personal reputational interests.[18] Moreover, the United States Congress,[19] many of the state legislatures and state courts,[20] federal courts, and the American Bar Association[21] have expressed concern that individuals will be harmed if grand juries exercise unfettered reporting power.

The framers of our constitution were acutely concerned with the need to protect the rights of citizens. This need was the chief reason cited by the primary sponsor of the grand jury reporting power to support the need for the power.[22] In the context of legislative and executive investigations, the delegates were sufficiently concerned about the possibility of damage to the reputation of individuals that special language was attached to the due process clause of the Alaska Constitution which guarantees to all persons "fair and just treatment in the course of legislative and executive investigations."[23]

The delegates hoped to avoid the excesses which they felt were characterized by the conduct of Senator Joseph McCarthy: "[H]e indulged in vilification, character assassination, and an intimation of guilt by association."[24] The delegates hoped that this clause would prompt the legislature to make rules of procedure to safeguard the reputational interest of individuals.[25] The

judiciary was excepted from this clause, but not because the delegates wanted the courts to have the power to treat individuals unfairly. Instead, the delegates believed that the concept of due process itself directly constrained the judiciary while it less clearly applied to legislative and executive investigations.[26]

It is not reasonably possible to believe that our constitutional framers who were so protective of personal reputational interests that they desired the legislature to make rules affording due process to those involved in legislative investigations also intended grand jury investigations to be free from due process constraints. In fact, as noted, the delegates believed that the due process clause already provided the same protection in the context of the judiciary, although grand juries were not specifically mentioned in this discussion.

Indictments issued by grand juries have traditionally been subject to various forms of judicial review. The anti-suspension language of our constitution was imported without discussion from the Missouri Constitution, which in turn is based on the New York Constitution.[27] In those states the clause is, however, solely applicable to investigations resulting in indictments. *Wood v. Hughes*, 9 N.Y.2d 144, 212

---

**18.** Stern, *Revealing Misconduct by Public Officials Through Grand Jury Reports*, 136 U.Pa. L.Rev. 73, 132 (1987); Kuh, *The Grand Jury "Presentment": Foul Blow or Fair Play?* 55 Colum.L.Rev. 1103, 1132 (1955); Note, *The Reportorial Power of the Alaska Grand Jury*, 3 Alaska L.Rev. 295, 326 (1986); Comment, *Constitutional Law—Judicial Powers—Legality of the Grand Jury Report*, 52 Mich.L.Rev. 711, 725 (1954).

**19.** *See* 18 U.S.C. § 3333 (1988) (providing for pre-publication judicial review of special grand jury reports).

**20.** *People v. Superior Court of Santa Barbara County*, 13 Cal.3d 430, 119 Cal.Rptr. 193, 531 P.2d 761 (1975); *State v. Wurdman*, 187 S.W. 257 (Mo.1916); *In the Matter of the Report of Washoe County Grand Jury*, 95 Nev. 121, 590 P.2d 622, 625–26 (1979); *In re Presentment of Camden County Grand Jury*, 10 N.J. 23, 89 A.2d 416 (1952). *See generally,* Stern, 136 U.Pa. L.Rev. at 77–79 nn. 7–8, 10.
    The California Supreme Court wrote in *People v. Superior Court of Santa Barbara County* that the numerous cases throughout the United States which have addressed the question uni-

formly recognize that under the common law the court which convenes a grand jury has the authority to refuse to file a report that violates governing legal standards.
531 P.2d at 767–68.

**21.** American Bar Association, *Grand Jury Policy and Model Act*, 4 (1982) (quoted in Stern, 136 U.Pa.L.Rev. at 77 n. 7).

**22.** Proceedings at 1405–06 (comments of Delegate Barr).

**23.** Alaska Const. art. I, § 7, set out *supra* note 9.

**24.** Proceedings at 1449 (statement of Delegate Taylor).

**25.** Proceedings at 1465, 1467 (statements of Delegates R. Rivers and V. Rivers).

**26.** Proceedings at 1448–50 & 1465 (statements of Delegate R. Rivers).

**27.** *Supra* note 6.

N.Y.S.2d 33, 173 N.E.2d 21 (1961); *Matter of Interim Report of the Grand Jury*, 553 S.W.2d 479 (Mo.1977). We are aware of no cases construing the anti-suspension clauses of the constitutions of either Missouri or New York which suggest that judicial review of an indictment amounts to a suspension of the grand jury's power.[28] Since the framers of the Alaska Constitution used language which did not bar judicial review in the context from which it was taken, it reasonably can be concluded that there was no intention to bar judicial review in the new context in which the phrase was used.

■ The courts of the state of Alaska have the constitutional duty to review actions by agencies of the state in order to ensure compliance with all provisions of the Alaska Constitution. *Malone v. Meekins*, 650 P.2d 351, 356 (Alaska 1982); *K & L Distribs. v. Murkowski*, 486 P.2d 351, 357–58 (Alaska 1971). This function applies not only to coordinate branches of government such as the legislature, *Malone, supra*, and the executive branch, *K & L Distribs., supra*, but to component parts of the judiciary such as lower courts, and the grand jury.[29] It would be a radical deviation from this consistent line of authority to conclude that the anti-suspension clause means that this power does not exist with respect to grand jury reports. This would mean that only the grand jury can judge whether it has complied with the limitations imposed on its action by the constitution and whether it has violated the constitutionally protected rights of others. We see nothing in the language of the anti-suspension clause, in the debates of the Constitutional Convention, or in the relevant legal history which lends even slight credence to this view.

■ Appellants also alleged that Criminal Rule 6.1 violates the first amendment of the United States Constitution and article 1, section V of the Alaska Constitution, is an improper exercise of the court's rule-making power, is contrary to the state's public records acts, AS 09.25.100–.125, and serves to unconstitutionally expand the superior court's jurisdiction. Upon consideration we find that all of these allegations lack merit. *See Hammond v. Brown*, 323 F.Supp. 326, 350 (N.D.Ohio 1971), *aff'd* 450 F.2d 480, 482 (6th Cir.1971) (per curiam); *McClatchy Newspapers v. Superior Court*, 44 Cal.3d 1162, 245 Cal.Rptr. 774, 786–88, 751 P.2d 1329, 1341–42 (1988) (en banc); *People v. Superior Court of Santa Barbara County*, 13 Cal.3d 430, 119 Cal. Rptr. 193, 200, 531 P.2d 761, 768 (1975).

### III. RELEASE OF PORTIONS OF PART II OF THE GRAND JURY REPORT

As previously indicated, at the conclusion of oral argument this court ordered that all of Part II of the Grand Jury Report entitled "Findings and Recommendations and Conclusions" (hereafter Recommendations) be immediately released, deleting only the names of interested parties. We noted that the question whether more of the Grand Jury Report would be released remained under advisement and that an opinion would follow. We now explain our reasons for ordering the immediate release of the Recommendations.

■ First, because article I, section 8 explicitly grants authority to grand juries "to make recommendations concerning the public welfare or safety" it is our view that the Recommendations are constitutionally authorized. The background text consisting of some 70 pages detailing the dispute

---

**28.** See cases discussed *supra* note 6, which illustrate the review of grand jury indictments which takes place in Missouri and New York.

**29.** *See, e.g., Wamser v. State*, 652 P.2d 98 (Alaska 1982) (violation of defendant's constitutional right to be present for all communication between court and jury is reversible error); *Dixon v. State*, 605 P.2d 882 (Alaska 1980); *Adams v. State*, 598 P.2d 503 (Alaska 1979) (grand jury did not have enough evidence properly before it to indict defendant and so indictment was inval-

id); *State v. Ison*, 744 P.2d 416 (Alaska App. 1987) (indictment improper because grand jury was not presented with sufficient evidence to support the charge); *Smaker v. State*, 695 P.2d 238 (Alaska App.1985) (trial court abused its discretion and violated defendant's right to due process by refusing to allow defendant to call witness); *Depp v. State*, 686 P.2d 712 (Alaska App.1984) (defendant sought to have indictment dismissed on ground that rural Alaskans were systematically excluded from grand juries).

between the Anchorage School District, the Anchorage Police Department and the Anchorage District Attorney's office does not stand on the same constitutional footing. We believe that such background material is implicitly covered by article I, section 8 only to the extent that it is necessary to make the grand jury's Recommendations understandable. We find that the Recommendations are understandable without the background text, given Part I of the Grand Jury Report which has been previously published, and public information which has been widely disseminated concerning the underlying dispute. Thus there is no constitutional compulsion to release the background text.

■ Second, we ordered release of the Recommendations on the same day we heard oral argument. This was some two weeks before a municipal election in which the office of mayor and certain municipal assembly and school board seats were being contested. Because the grand jury Recommendations were generally critical of school district actions, while finding that the police and the district attorney's office had acted appropriately, we believed that the Recommendations should be immediately released as they might have a bearing on the election. The Recommendations mentioned the names of certain interested parties who had argued that the report would adversely reflect on them. We ordered their names deleted as they were not essential to understanding the Recommendations.[30] We did not order the interested parties' names deleted because we necessarily agreed with their contentions that the report adversely reflected on them or was unsupported by substantial evidence.

We are now persuaded that the names of most of the interested parties mentioned in the Recommendations should be released. In the main, the Recommendations do not adversely reflect upon them in any serious or substantial way. Further, except as noted below, the grand jury's characterization

of the interested parties' conduct meets the substantial evidence standard under Criminal Rule 6.1(c)(5).

■ Despite ordering the release of most of the names mentioned in the grand jury's Recommendations, we note that grand jury procedures are not well designed to provide balanced fact finding. Although the grand jury consists of unbiased citizens, the only attorney to appear before the grand jury is the prosecutor.[31] The prosecutor generally decides what evidence will be presented to the grand jury and those under investigation have no notice or opportunity to be heard, no ability to call witnesses on their own behalf, no right to cross-examine witnesses, and no right to present their arguments. While under Criminal Rule 6.1 the trial judge may order the grand jury to consider evidence on behalf of an interested party, this order is made only after the grand jury has already at least tentatively committed itself to a report adversely reflecting on the party. Thus, it should be widely understood that grand jury reports may be extremely one-sided. They should not be given the same degree of credence as a trial court judgment.

■ In one respect the Recommendations reflect adversely on individuals in a manner unsupported by substantial evidence. Since the Recommendations have already been released, the only meaningful remedy at this point is to continue to withhold the names of the interested parties whose reputations would otherwise unjustly be damaged.

In four paragraphs beginning with subparagraph (b) on page 75 of the Recommendations, the grand jury states that school officials violated an "ethical if not a legal obligation ..." concluding that school officials report of their investigation to the state "could be interpreted as an attempt to gain statutory immunity ... 'just in case' a report was legally required." Use of the term statutory immunity here is an

---

**30.** None of the interested parties were candidates in the pending municipal election.

**31.** Here, the prosecution was represented by an assistant district attorney from Fairbanks. All district attorneys and their assistants are employees of the State Department of Law.

obvious misnomer. Statutory immunity is immunity from prosecution for a particular crime which is granted to a person so that he may be compelled to testify against another in a prosecution for the same or a related crime.[32] An effort to obtain statutory immunity may imply that the person making the effort committed a crime. There is absolutely no evidence that any school officials involved in this case ever mentioned, or sought, statutory immunity. Thus, this aspect of the Recommendations does not satisfy the substantial evidence test.[33]

We turn now to the question whether any portion of the background text preceding the Recommendations should be released. Although release of this text is not constitutionally required, it is part of the Grand Jury Report and should be released under Criminal Rule 6.1 unless the provisions of that rule require that some or all of it remain confidential.

Most of the first 70 pages of Part II of the report relate the history of the investigation of the Bartlett High School teacher's sexual relationships with high school students. We have reviewed this material and believe that it does not adversely reflect on the interested parties—as distinct from the Bartlett High School teacher—in any serious or substantial way. Moreover, the grand jury's description of the interested parties' conduct suggests that the substantial evidence standard of Criminal Rule 6.1(c)(5) would be satisfied in any case.

However, there is an exception to this conclusion. The grand jury details information which had previously remained confidential concerning an investigation of allegations of sexual misconduct on the part of two other teachers. The names of these teachers are not mentioned but they are identifiable given other information in the report, and they are interested parties herein. These allegations were resolved in favor of the teachers and none of the parties before this court now claim that the allegations had merit. Nonetheless, the allegations are contained in the grand jury report "in order for the grand jury to fully understand the motives and actions of individuals involved in the [present controversy]."

▇▇▇▇ While it may have been useful for the grand jury to review the prior investigation, no similar purpose is served by publication of its details. The grand jury's discussion of the allegations against the teachers adds little or nothing to the comprehensibility of the Recommendations. Publication of the discussion would gravely harm the reputations of the teachers. We therefore order expunged from the Grand Jury Report all mention of this investigation for two reasons. First, the allegations against the teachers were unsubstantiated and thus were unsupported by substantial evidence. Second, publication of the allegations would improperly infringe the constitutionally protected reputational interests of the teachers. There is no countervailing constitutional end to be served by publication of the allegations since they are not necessary to an understanding of the Recommendations made by the grand jury.[34]

---

**32.** *See* AS 12.50.101 (authorizing the use of statutory immunity in certain circumstances).

**33.** The names of the interested parties who are wrongly said to have sought statutory immunity have also been deleted from the background text where they may be identified with that accusation.

**34.** Justice Rabinowitz takes the position that because the grand jury considered indicting certain individuals for perjury but decided not to do so on the grounds of insufficient evidence, the discussion in the report concerning perjury should be deleted. In our view this position conflicts with Criminal Rule 6.1 which provides that "a grand jury report may include allegations of criminal conduct" without also requiring that the allegations be accompanied by an indictment. Criminal Rule 6.1(a)(2). Similarly, Criminal Rule 6(n)(2) contemplates that a report may issue under Criminal Rule 6.1 even where a defendant has not been held to answer in an indictment. While we agree that a grand jury report should not be used as a vehicle to defame those whom the grand jury lacks sufficient evidence to indict, the public informational values of the grand jury's investigative and recommending function must also be considered. The balance which has been struck between individual rights and public informational values is reflected by the substantial evi-

For the above reasons, we order released Part II of the Grand Jury Report of March 15, 1990, with deletions as noted above.[35] We also order that the final written responses of those interested parties who are still mentioned in the expunged report and who have preserved their right to file such responses be attached as an appendix.[36]

COMPTON, J., with whom BURKE, J., joins, dissenting.

RABINOWITZ, J., dissenting in part.

COMPTON, Justice, with whom BURKE, Justice, joins, dissenting.

Delegate Barr proposed to the delegates attending the Alaska Constitutional Convention that there be included in the constitutional provision establishing grand juries that the grand jury's "power ... to investigate and make recommendations concerning conditions involving the public welfare or safety shall never be suspended."[1] The proposal was vigorously debated. Delegate Buckalew spoke strongly against it, stating:

[M]y prime objection to this particular amendment is that ... the grand jury might have under investigation the conduct of some particular public office, for example the governor, or any public official, the local tax collector. They don't have enough evidence to return an indictment but this would give them the power to blast him good and hard, and I think it would lead to all kinds of trouble and I think it is an unheard of provision. The recommendation of the Committee [without the language contained in the proposal] provided that the grand jury could

investigate, they could return indictments, but it certainly did not give them the privilege to more or less defame somebody if they did not have quite enough action for a [true] bill. Under this they could discredit him completely, and he would have no way of answering. He might be able to come back and get the report of the grand jury stricken from the records of the court, but the damage would then be done. I think it is extremely dangerous because a citizen would not have any protection. Once it was published the only thing he could do would be to then come in and ask the court to strike portions of it. For that reason I would object to it.

4 Proceedings of the Constitutional Convention 1405.

The contrary view is reflected in the remarks of Delegate Hellenthal, who stated:

[I]t is true there is little protection against what they call ... a runaway grand jury, but in the history of the United States there have been few runaway grand juries, extremely few, and I think that the broad statement of power ... asked for [by the proposal] is proper and healthy.

*Id.* at 1406.

Despite the risks catalogued by Delegate Buckalew, it is evident that most of Alaska's founders believed the grand jury's power to investigate and recommend concerning the public welfare and safety should remain unfettered. Moments after Delegate Buckalew spoke against the proposal, the convention voted, by an over-

---

dence standard and the due process protections contained in the rule, not by a flat prohibition on the discussion of potential criminal conduct when the grand jury chooses not to indict.

**35.** We have reviewed the other claims of the interested parties and find them to be without merit.

**36.** In view of the deletions we have made, the interested parties should be given a reasonable time within which to make deletions from their final written responses as appropriate.

**1.** As originally proposed, this provision gave grand juries the power "to investigate and make

recommendations concerning conditions *detrimental to* the public welfare or safety." 4 Proceedings of the Constitutional Convention 1406 (emphasis added). During the debate being discussed here, the words "detrimental to" were changed to "involving." *Id.* This change was suggested by Delegate Hellenthal, who believed that it should be made clear in the constitution that "the investigatory power of a grand jury is extremely broad," and that "a grand jury can investigate anything." *Id.* As finally passed, "conditions involving" was itself deleted, leaving only "to investigate and make recommendations concerning the public welfare or safety" as the only constitutional limitation on a grand jury investigation.

whelming margin, to adopt it.[2] Thus was born what now appears as the last sentence of article I, section 8 of the Alaska Constitution: "The power of grand juries to investigate and make recommendations concerning the public welfare or safety shall never be suspended."

Webster's *Third New International Dictionary*'s first definition of "never" is "not ever: not at any time; at no time." Its second is "not in any degree: not in the least: not in any way: not under any condition." Its first definition of "suspend" is "to debar or cause to withdraw temporarily from any privilege, office, or function." Indeed, the next three definitions are similar. Criminal Rule 6.1, adopted by this court pursuant to its rule making authority, not only suspends the power of grand juries to investigate and make recommendations concerning the public welfare or safety, but also permits censorship of a grand jury report generated as result of the exercise of that power before the report is even published.

The court justifies suspension and censorship of a report under the guise of protecting "any person" from improper infringement of their constitutional rights that would result from publication of the report, Rule 6.1(b)(2), or from being adversely reflected on by being "named or otherwise identified" in the report, Rule 6.1(c). It asserts that constitutional justification for the rule is found in the fourteenth amendment to the United States Constitution and in article I, section 7 of the Alaska Constitution, each of which mandate that a person may not be deprived of life, liberty, or property without due process of law. Citing *Wisconsin v. Constantineau*, 400 U.S. 433, 436–37, 91 S.Ct. 507, 509–10, 27 L.Ed.2d 515 (1971), the court reasons that when the state affects a person's reputation interest by attaching a "badge of infamy" to that person, the state is depriving that person of life, liberty, or property. Therefore, notice and an opportunity to be heard, *i.e.* due process of law, are essential. Suspension and censorship

of the grand jury report in accordance with Rule 6.1 protects the person's reputation interest and hence is a constitutionally permissible method of assuring due process of law.

If the court is concerned that a person named or otherwise identified in a report, in a manner that will adversely reflect on that person, be given notice and an opportunity to be heard, a simplification of procedures contained in Rule 6.1(c) and (d) would be adequate to satisfy that concern. However, the prepublication suspension and censorship procedures provided in Rule 6.1 go far beyond satisfying that concern.

I agree with the court that the grand jury is part of the judicial function of government, and that courts have the power to edit grand jury indictments, and hence by implication edit grand jury reports that do not result in indictments. I also agree that courts are not prevented from protecting in some manner against grand jury violations of constitutional rights. However, I cannot agree that courts have the power of pre-publication suspension of grand jury reports or suppression of grand jury reports in whole or in part to protect against a grand jury violation of constitutional rights.

Most of the cases cited by the court to support its argument do not arise in *in camera* secrecy. An indicted defendant who moves to dismiss the indictment for insufficiency of evidence presented to the grand jury, or for procedural irregularities or misconduct on the part of actors in the grand jury proceedings, is nonetheless a *named* person who, after the fact, files pleadings which are public documents. That defendant's forum is a public judicial forum, even though that defendant may suffer a consequential and significant loss of reputation simply by being indicted, and even though the indictment is dismissed and the defendant never again indicted. That defendant's reputation interest may

---

**2.** After a roll call vote, the result was "44 yeas, 8 nays, and 3 absent." 4 Proceedings of the Constitutional Convention 1408.

be permanently compromised in the process.

Although "[an] indictment is not a 'report' as used in [Criminal Rule 6.1] and Criminal Rule 6," a grand jury report may include allegations of criminal conduct. Criminal Rule 6.1(a)(2). It must follow from the court's reasoning that as long as all the required procedures are followed, a person named in a grand jury report may be alleged to have engaged in criminal conduct, yet aside from attaching a denial to the report, that person has *no* public judicial forum in which to vindicate a compromised reputation interest. Furthermore, Criminal Rule 7(c) provides that when an indictment is found, "the names of all witnesses examined before the grand jury must be inserted at the foot of the indictment, or endorsed thereon, before it is presented to the court." An indictment is a public record. Criminal Rules 6($l$)(2) and (n)(1). Since the public does not know why, and may never be told why a witness was called before a grand jury which indicts a soon to be notorious defendant, that witness's reputation interest may be severely compromised, yet that witness has *no* public judicial forum in which to vindicate the compromised reputation interest.

I fail to understand why the reputation interest of some persons is to be protected by Criminal Rule 6.1 procedures, while the same interest of another receives no protection. The court provides no guidance, for it fails to articulate why the reputation interest of some persons is of constitutional magnitude, while the reputation interest of others is not apparently so elevated.

I do not disagree that procedures should be developed which provide "any person who is named or otherwise identified" with notice and an opportunity to be heard for the purpose of presenting his or her side of the story. Nor should persons within that class be limited to those whose reputation interest is compromised in the report of an investigative grand jury.

While I cannot understand why any person named or otherwise identified in an indictment should be treated differently from those "named or otherwise identified" in a grand jury report, it is not this anomaly that causes me to conclude that Criminal Rule 6.1 is inconsistent with article I, section 8 of the Alaska Constitution. The anomaly serves to highlight the failure of the court to utilize the proper analytical framework in determining the issue presented. Assuming that a reputation interest is protected under the Alaska Constitution, a proposition never before articulated by this court, the analysis should take place in the context of *two constitutional* provisions which are apparently irreconcilable. Unfortunately the focus of the court's analysis is directed to cases concerning the power of a court to adjudicate issues relating to grand jury proceedings after the fact, when it should be focused on the tension between a constitutionally created judicial body constitutionally empowered to investigate and recommend in the name of public welfare or safety, and the constitutional right of a person not to be "deprived of life, liberty, or property, without due process of law." Alaska Const., art. I, § 7. To resolve this conflict, I believe the court must first determine what is meant by the "anti-suspension" clause of article I, section 8. It chooses not to do so.

The requirement of *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), is that of notice and an opportunity to be heard. The United States Supreme Court does not suggest that the opportunity must be *in camera*, that it must be afforded before the fact, or that unless supported by substantial evidence, the state may not attach a "badge of infamy" to a citizen without first providing a private judicial forum to adjudicate the citizen's objections. Yet this court, in adopting Criminal Rule 6.1, has adopted what I believe to be the most restrictive construction of the "anti-suspension" clause imaginable.[3] This procedural rule is

---

3. In the Memorandum of Intervenor Anchorage Daily News, some alternative procedures for harmonizing the conflicting interests are suggested, including retaining most of the present rule, but making proceedings under sections 6.1(c) and (d) open to the public. Another alternative not there suggested, but deserving of consideration, would be to give a person named or

not the least bit deferential to the "anti-suspension" clause. Indeed, it mocks it. If the language of the constitutional provision is not clear enough, the rejection of Delegate Buckalew's objections to it persuade me that the constitutional debate has both addressed and answered the question whether the "anti-suspension" clause is to be construed restrictively or expansively. Only an expansive construction is consistent with its plain language and the debate and vote. I see no need to resort to proceedings and judicial interpretations regarding the state constitutions of New York and Missouri for illumination, interesting though they may be.

The apparent conflict between article I, sections 7 and 8 of the Alaska Constitution can be reconciled by providing "any person" with notice and an opportunity to be heard during the course of grand jury proceedings, utilizing procedures herein suggested or elsewhere developed. The grand jury, and not the courts, can choose matters on which it reports and recommends, and the manner in which to do so. Its constitutional power shall never be suspended by the overlay of cumbersome procedures which provide for private judicial adjudications and review of whether the report it is to publish adversely reflects on someone, or otherwise allegedly violates his or her constitutional rights. If an aggrieved person disagrees with the report, either because it adversely reflects on that person, or because a constitutional right of that person is allegedly violated, he or she can seek relief in a public judicial forum. Alaska's constitution will not have been compromised in the process.

In my view Criminal Rule 6.1 violates the "anti-suspension" clause of article I, section 8 of the Alaska Constitution. Therefore I dissent.

RABINOWITZ, Justice, dissenting in part.

I join in the court's decision that Criminal Rule 6.1 is constitutional. I further agree with the holding of Part III expunging the section of the Report concerning the investigation of irrelevant and unproved allegations of misconduct by "two other teachers." While I agree that the bulk of the Report and Recommendations should be published, I conclude that several portions of the Report fail the Rule 6.1 test for publication and therefore should be expunged from the report prior to its release.

My disagreement is based upon the three part test of Criminal Rule 6.1.[1] Because the Report concerns the public welfare, application of the test for publication concerns the second and third prongs of the Rule 6.1 test. These are (1) Would publication infringe a constitutional right of any person?[2] and (2) If publication would reflect adversely on an identifiable person, is the report supported by substantial evidence?[3] Application of the Rule 6.1 test leads me to conclude that the following portions of the Grand Jury's Report and Recommendations should be expunged prior to publication.

*Speculation about attempts to conceal wrongdoing and provocation of APD.*

The Report refers to "fear and mistrust" and "intimidation" within Anchorage School District (ASD), and what "provoked" the Anchorage police department's

---

otherwise identified notice and an opportunity to be heard, including the right to be represented by counsel, in the course of the investigatory grand jury proceeding. While this alternative might slow down the grand jury investigation, it would obviate the need for the cumbersome proceedings presently required. The grand jury itself would determine whether to include, modify or exclude its reference to a person named or otherwise identified. Other less restrictive alternatives come to mind, including requiring the availability of a judge to rule on some issues as they arise, not after a complete report has been prepared, submitted and reviewed.

1. The majority implies that under a balancing test, background text receives less weight than recommendations. I agree with this formulation. However, I have not attempted to balance any competing interests; rather, I cite those instances where, in my view, the text of the Report fails the test for publication under Criminal Rule 6.1.

2. Criminal Rule 6.1(b)(2).

3. Criminal Rule 6.1(c).

(APD) enforcement response. A common understanding of provoke is "to stir up on purpose: bring about deliberately." *Webster's Third New Int'l Dictionary* 1827 (1961). The Report further states that "The Grand Jury can understand how their actions could have been viewed as attempts to conceal wrongdoing." Such statements reflect adversely on identifiable persons; yet, in my view, they are so speculative they fail the substantial evidence test and should not be published.

*The background text: implication of perjury.*

Section G of the background text is entitled "Perjury." This section begins, "[t]he Grand Jury did not indict anyone for perjury under AS 11.56.200(a) due to its belief that the evidence would not justify a trial jury in finding the elements of perjury beyond a reasonable doubt. . . ." The Report then describes what can be assumed are the facts upon which it bases its conclusion. Again applying a Rule 6.1 analysis, I conclude that section G should not be published.

Section G implies that various officials committed perjury, yet the evidence submitted to the grand jury was insufficient to support an indictment for this crime. A grand jury report should not be used as a vehicle to defame those whom the grand jury lacks sufficient evidence to indict.[4]

## APPENDIX

Rule 6.1. **Grand Jury Reports.**

(a) **Authority to Issue Reports.**

(1) A grand jury may investigate and make reports and recommendations concerning the public safety or welfare. An indictment is not a "report" as used in this rule and Criminal Rule 6.

(2) A grand jury report may be made only upon the concurrence of a majority of the total number of grand jurors on the panel at the commencement of the proceedings resulting in the report. The report

must be signed by the foreperson. A grand jury report may include allegations of criminal conduct.

(b) **Initial Judicial Review.** The grand jury shall present any proposed report to the presiding judge of the judicial district. The judge shall examine the report and the grand jury record before the grand jury is discharged. The judge may order production of audio copies or transcripts of the grand jury proceeding and may request the prosecuting attorney to submit a summary of the evidence presented to the grand jury. The judge shall make specific findings on the record as required by the following subparagraphs.

(1) The judge shall determine first whether the report satisfies the requirements of subparagraph (a)(1) & (2). If it does not, the judge shall proceed under subparagraph (b)(3).

(2) The judge shall then determine if publication of the report would improperly infringe upon a constitutional right of any person, including but not limited to improper interference with a person's right to privacy or right to a fair trial in a pending or planned criminal proceeding. The judge shall make an ex parte on the record inquiry of the prosecuting attorney about any planned or pending criminal prosecutions related to the subject of the grand jury report.

(3) If the judge determines that the report does not meet the standards of subparagraphs (a)(1), (a)(2) or (b)(2) the judge shall return the report to the grand jury with an explanation of the reasons for returning the report. The grand jury may conduct further proceedings, revise the report, or seek appellate review of the judge's decision not to release the report.

(c) **Judicial Review If Report Adversely Reflects on Identifiable Person.** If the judge determines that the standards of paragraph (b) are satisfied, the judge shall determine whether any part of the report may reflect adversely on any person who is

---

4. Although Criminal Rule 6.1 authorizes courts to prohibit publication of grand jury reports which are tainted by prosecutorial abuse of the grand jury process, this record does not require that the allegations of abuse be addressed.

named or otherwise identified in the report. "Person" includes a natural person or an organization, but does not include a governmental subdivision or agency. If the report may adversely reflect on any identifiable person, the judge shall proceed under the following subparagraphs (c)(1)—(5).

(1) The judge shall order that notice of the report be provided to the person. The notice must advise the person of his or her rights as provided in this paragraph.

(2) The person may move, within ten days of notice of the report, for a hearing. The hearing will be held in camera and on the record.

(3) The person must be given a reasonable period of time prior to the hearing to examine the grand jury report and the record of the grand jury proceedings. A person receiving notice or a copy of the report and record may not disclose any matter occurring before the grand jury except as permitted by the court. Each person receiving these materials must be advised of this obligation.

(4) The person named or otherwise identified in the report may be represented by counsel at the hearing and may present argument as to whether the standards stated in subparagraph (c)(5) are satisfied. The prosecuting attorney may be present at this hearing and may also present argument. Neither side may present evidence nor examine witnesses, except that the named or otherwise identifiable person may submit a written response to the grand jury report which the person may request that the court issue with the report under paragraph (d).

(5) The judge shall determine at the close of the hearing whether that part of the report which may adversely reflect upon a named or otherwise identified person is supported by substantial evidence or, if raised at the hearing, whether the report satisfies the requirements of paragraph (b) of this rule and paragraph (1) of Criminal Rule 6. If the judge finds that these requirements are not satisfied, the judge shall return the report to the grand jury with an explanation of why the report has not been released. The court may request that the grand jury consider further evidence as to the named or otherwise identifiable person. The grand jury may conduct further proceedings, revise the report, or seek appellate review of the decision not to release the report.

(d) **Release of Report.**

(1) The court shall withhold publication of the report until the expiration of the time for making a motion for a hearing under paragraph (c). If such a motion is made, publication must be withheld pending a ruling on the motion or pending any review under paragraph (e). All proceedings under this rule are confidential until the presiding judge orders the report released.

(2) If the judge finds that the standards of paragraphs (b) and (c) are met, the judge shall order the report released. The judge may order that a response to the report by a person named or otherwise identified, or other additional materials, be attached to the report as an appendix. The report and any appendices will be filed with the clerk of the court and made available for public inspection. The court shall also direct that copies of the report and any appendices be sent to other persons as reasonably requested by the grand jury.

(e) **Appeal.**

(1) A judicial determination under paragraph (d) of this rule is a final order for purposes of appeal. Such an appeal is governed by Appellate Rule 216 except that the appeal is to the Supreme Court. Any named or otherwise identifiable person, the state, or the grand jury by majority vote may seek review of the presiding judge's decision.

(2) The grand jury will be permitted access to the record of the in camera hearing to assist it in determining whether to pursue appellate review. The grand jury shall maintain the confidentiality of this record.