580 ■■■■■■■■■■■■■■■ ;

Albert MUNSON, Plaintiff, v. TERRITORY OF ALASKA; J. Gerald Williams, Attorney General for the Territory of Alaska; Hugh J. Wade, Treasurer of the Territory of Alaska; John A. McKinney, Director of Finance of the Territory of Alaska; Clarence L. Anderson, Director, Alaska Department of Fisheries; Nels Nelson, Member, Alaska Fisheries Board; Howard Wakefield, Member, Alaska Fisheries Board; Robert Kallenberg, Member, Alaska Fisheries Board; Kenneth D. Bell, Member, Alaska Fisheries Board; Ira A. Rothwell, Defendants.

Civ. No. A–11769.

District Court, Alaska. Third Division, Anchorage.

Dec. 28, 1956.

Jack F. Scavenius, Anchorage, Alaska, for plaintiff.

J. Gerald Williams, Atty. Gen., for defendants.

Kay & Buckalew, Anchorage, Alaska, for defendant Rothwell.

McCARREY, District Judge.

This case was tried before the court under the Declaratory Judgment Act which has been extended to the Territory of Alaska. 28 U.S.C.A. § 2201.

One Ira A. Rothwell was appointed to the Alaska Fisheries Board March 29, 1950, for a period of five years. On March 24, 1955, and while the Twenty-second Territorial Legislature was in regular session, the Honorable B. Frank Heintzleman, Governor of the Territory of Alaska, submitted a letter for his reappointment to the legislature, as follows:

> "In accordance with the provisions of chapter 68, Session Laws of Alaska 1949, I submit herewith for confirmation by a majority of all the members of the Senate and House of Representatives in joint session assembled, the name of Mr. Ira Rothwell of Cordova, Alaska, for appointment to the Alaska Fisheries Board for the term ending March 31, 1960."

The legislature adjourned on March 25, 1955, sine die, without acting upon this request and no further action was taken in its extraordinary session, which followed the regular session. The governor took no further action in regard to his appointment. Nevertheless, Mr. Rothwell continued to serve as a member of the board beyond the five years of the original appointment without taking another oath of office or receiving a new certificate.

By letter dated August 1, 1955, the Governor of Alaska appointed the plaintiff, Albert Munson, on an interim status, to take the place of Mr. Rothwell. On August 5, 1955, the plaintiff executed the oath of office and received a certificate of his appointment.

The Alaska Fisheries Board, in preparation for a meeting which was called for November 7, 1955, through its then director, Clarence L. Anderson, sent notices of said meeting to all members of the Alaska Fisheries Board, including Ira A. Rothwell, but failed to send a notice to the plaintiff, Albert Munson.

Mr. Munson, nevertheless, flew to Juneau and attended all meetings of the board but was refused his seat by the

other members of the board. Thereafter he submitted vouchers to the Director of Finance, as provided by law, § 12–3–1, A.C.L.A.1949 and S.L.A.1955, c. 82, who disapproved the same. Mr. Rothwell submitted his vouchers and they were paid by the Director of Finance.

The plaintiff prayed for

" * * * a judgment decreeing, determining and declaring that this plaintiff is a duly-appointed and qualified member of the Alaska Fisheries Board and that said plaintiff is entitled to pay any remuneration for his attendance at the meetings of said board and for his attendance at such future meetings as the board may hold.

"Plaintiff further prays * * * a judgment decreeing, determining and declaring that defendant Ira A. Rothwell is not a duly-appointed and qualified member of the Alaska Fisheries Board and is not entitled to any remuneration or payment for any meetings of said board which he may attend. * * * "

As heretofore announced from the bench, I am of the opinion that the plaintiff did not exhaust his administrative remedies for the payment of his expenses while in attendance at the meetings of the Board of Fisheries, thus such relief is hereby summarily denied.

Pursuant to the provisions of S.L.A.1949, c. 68, sec. 3(a), the " * * * confirmation by a majority of all of the members of the Senate and House of Representatives in joint session assembled * * *." was necessary to the plaintiff's appointment.

On March 19, 1955, an act was passed entitled House Bill No. 156, characterized as follows:

"An act to provide procedural uniformity in the appointments of certain Territorial Administrative and Executive officers, and certain members

of Territorial boards, commissions, authorities, councils, and committees; prescribing an additional qualification for appointments; repealing prior inconsistent Acts; and declaring an emergency."

This bill was returned to the legislature on March 29, 1955, without the Governor's signature. Accordingly, this act became law at midnight on March 22, 1955. Section 4–3–3, A.C.L.A.1949 and sec. 7 of the act. This statute was in effect at the time the Governor submitted the name of Ira Rothwell to the legislature. This act, S.L.A.1955, c. 64, will hereinafter be referred to as the 1955 act.

Under the provisions of the act of 1949 supra, though Mr. Rothwell's term was to expire on March 31, 1955, he continued to hold office until his successor was " * * * appointed and duly qualified". The Governor had power under this act to make an interim appointment which would be subject to the confirmation by the legislature at its next session.

There is but one issue to be determined in this case and that is, what effect did silence and inaction on the part of the legislature have on the attempted reappointment by the Governor of Mr. Rothwell, that is, was such inaction tantamount to confirmation, rejection, or was it without any legal effect whatsoever.

The question of case law on this subject has been briefed and argued at considerable length by the parties. It is the position of the defendant that the cases cited concerning the right to public office upon appointment and difference in wording between the statutes involved in those confirmation are not applicable in this case because of the cases and the 1955 act. A cursory comparison readily confirms this position. It is doubtful that one could find another statute with so much ambiguity and inconsistency as this one. The specific purpose of the legislators in enacting this particular act rests in the realm of conjecture, but this court must confine its opinion to their intent as expressed in the act.

Statutes requiring the action of two authorities in the completion of appointment are certainly nothing new. Article 2, sec. 2, cla...:e 2 of the Constitution, provides that the consent of the Senate is necessary for appointment to certain federal offices. Justice Marshall, speaking for the Supreme Court in Marbury v. Madison, 1803, 1 Cranch 137, 2 L.Ed. 60, 5 U.S. 137, interpreted this power of appointment to consist of three acts—first, the nomination by the executive; second, the appointment by the executive by concurrence of the Senate; third, the ministerial act of certifying the appointee. He states 5 U.S. at page 156:

> "The last act to be done by the president is the signing of the commission. He has then acted on the advice and consent of the Senate to his own nomination. The time for deliberation has then passed. He has decided. His judgment, on the advice and consent of the Senate concurring with his nomination, has been made, and the officer is appointed."

This would seem to establish a rule that there is no "appointment" within the meaning of vesting final title to the office until acted upon affirmatively by the legislative branch of the government. Justice Marshall states that until the legislature acts, the president is free to choose whom he will.

By the terms of the 1955 act, sec. 4(c), the legislature is required to act on the appointment within three days from the date the governor submits the name of the prospective appointee. Interpreting a similar statute in 1946, the Connecticut Supreme Court in State ex rel. McCarthy v. Watson, 132 Conn. 518, 45 A.2d 716, 724, 164 A.L.R. 1238, faced a similar situation. Quo warranto proceedings were brought by an office holder to try title to his office. His term had expired but by provisions similar to those contained in S.L.A.1949, c. 68, he continued to hold office until a successor was appointed and had qualified. The defendant had been chosen by the governor of the state to

succeed the plaintiff. The defendant's name had been submitted to the legislature prior to the expiration of the plaintiff's term in office. Contrary to the express provisions of the applicable act which provided that the legislature must act on the name submitted by the governor, the legislature voted not to consider the appointment. After the legislature adjourned the governor appointed the defendant to the position held by the plaintiff. The defendant argued as the defendant does in this case that the inaction of the legislature amounted to tacit confirmation. The Connecticut court said " * * * in acting upon an appointment, it [the legislature] is not exercising a prerogative granted it in its own interest or that of its members; *there can be no waiver of that duty so that inaction would be the equivalent of a tacit approval of an appointment"*. (Emphasis supplied.) The defendant's appointment was judicially determined invalid.

In Bell v. Sampson, 1930, 232 Ky. 376, 23 S.W.2d 575, 581, the Kentucky court interpreted a statute strikingly similar to the 1949 Fisheries Act. In that case the plaintiffs had been "appointed" by the governor to the state textbook commission in the interim between sessions of the legislature. The legislature met in 1928 and failed to act on the proposed appointments. A new governor had taken office in the meantime and at the adjournment of the legislature "appointed" a new set of members to the commission. The plaintiffs sought injunctive relief to restrain these appointees and the governor from acting upon the appointments. The court found in favor of the defendants. The court ruled that laws requiring bilateral appointments are mandatory and in the interest of the public, that to allow inaction to substitute for confirmation would void the beneficial effects of this type of legislation.

" * * * as no vote was ever taken in the Senate upon the appointments of Governor Fields [the plaintiffs], its nonaction as to such appointments cannot be * * * a confirmation of them."

Further,

"It would hardly be contended that if the Senate had, by vote taken, rejected the appointments of the Governor, then the right of the Governor to make other appointments could be questioned. And as the nonaction of the Senate is just such a rejection as an actual vote of rejection would have been, it follows that the power of the Governor to make other appointments is as comprehensive as it would have been after an actual vote of rejection." 23 S.W.2d at page 583, cited p. 4, plaintiff's brief.

It is apparently the position of the Kentucky court that inaction is tantamount to rejection and places an affirmative duty upon the governor to make a new appointment. This does not mean that the interim appointee can be arbitrarily removed from his position at the caprice of the governor.

If the legislature is in session at the time of the appointment, though a vacancy in the office may exist, the authorities frequently hold the appointee has no right to the office until confirmation. McBride v. Osborn, 1942, 59 Ariz. 321; 127 P.2d 134; State ex rel. Gibbs v. Rogers, 1940, 141 Fla. 237, 193 So. 435; Sims v. Tucker, 1941, 191 Ga. 676, 13 S.E.2d 773; Hockman v. Tucker County Court, 1953, 138 W.Va. 132, 75 S.E.2d 82.

"* * * appointment is not complete until confirmed by the members of the legislature as in the Act provided." ·

Lockwood v. Jordan, 1951, 72 Ariz. 77, 231 P.2d 428, 434.

The net effect of the governor's appointment when the legislature is in session is merely "nomination". McBride v. Osborn, supra; McChesney v. Sampson, 1930, 232 Ky. 395, 23 S.W.2d 584, 587; McCall v. Cull, 1938, 51 Ariz. 327, 75 P.2d 696.

Section 1 of the 1955 act declares it to be the intention of the legislature to achieve " * * * *the elimination, insofar as possible, of recess or interim appointments* except in the event of death, resignation, inability to act or other removal from office and the *exercise,* insofar as possible, *of such appointee powers only at such times as the Legislature is in session* duly assembled." (Emphasis supplied.) This expressed intention is certainly repugnant to tacit confirmation.

Section 4(c) contains language imposing a direct mandate upon the legislature to act upon the "nominations" of the governor.

> "Whenever appointments are presented to the Legislature for confirmation, *the Legislature shall,* in joint session assembled, *act* thereon within three days following receipt of the names so presented, *by confirming or declining to confirm by a majority vote* of all of the members thereof the appointments so made and presented;" (Emphasis supplied.)

The meaning of the phrase "by confirming or declining to confirm by a majority vote" is not easily determined. Literal interpretation would seem to demand that the legislature, acting on a motion for confirmation, should first vote on the question whether to confirm, and should the motion fail, again vote on the question of declining to confirm. Defendants argue that this is the proper construction. I am unable to attribute such an unreasonable intent to the territorial legislature. The question of confirmation is determined at the first vote; it would be ludicrous to require a second vote. By this reasoning, defendants' argument that the statute demands affirmative rejection falls.

Section 4(d) of the 1955 act provides in part:

> "*If the name of any person has been submitted and has not been confirmed, the appointing authority shall not, upon re-submission of appointments* as required by this Act, *submit again the*

*name of the person not confirmed* for the same 'position or membership' during that session of the Legislature;"

This language would certainly tend to negate any argument of tacit confirmation. The legislature indicated that if they fail to confirm the "nominee" he is ineligible to hold the position. It is difficult to see how they could be more explicit in indicating their own interpretation of the importance of confirmation.

Section 4(e) throws more ambiguity into the picture.

> *"Pending confirmation or rejection* of appointment by the Legislature, persons so appointed shall exercise all of the functions, have all of the powers and be charged with all of the duties by law prescribed for such appointive 'positions or memberships'." (Emphasis supplied.)

Literal interpretation of this subsection again would be risible. If applied to any but interim appointments, the appointee would in effect be holding the same office as the encumbent, assuming, of course, that the new appointee is a different person. Again I am unable to attribute this intent to the legislature. The apparent purpose of sec. 4(e) is to vest authority in necessary interim appointees and therefore could not be applied in this case because the legislature was in session at the time the reappointment of Rothwell was submitted.

The reason for dual consideration of prospective office holders is the benefit of the considered opinion of the legislators to avoid the possibility of incompetency and injury to the public which may otherwise be perpetrated. The basis is not one merely of giving the public a "veto power", lost by inaction, but is rather an affirmative duty of the legislature.

Inarticulated confirmation by the failure of the legislature to act is something foreign to the whole concept of division of powers embodied in the Constitution. There

are, of course, situations when unilateral appointments are unavoidable. The territorial legislature in the 1955 act declares its intent to avoid these appointments whenever possible. It cannot be said that such an intent is compatible with the concept of tacit confirmation sought to be enforced upon us. In view of this consideration, the only alternative left to this court is to rule that the failure of the legislature to act on Mr. Rothwell's "appointment" is, in effect, rejection. To rule otherwise would place this court out of the general line of authority and against the specific declared intent of the legislature.

I therefore hold that the plaintiff is entitled to a judgment decreeing and declaring him to be the duly appointed and qualified member of the Alaska Fisheries Board as was heretofore announced orally in open court.