*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| STATE OF ALASKA, OFFICE OF THE GOVERNOR, GOVERNOR MIKE DUNLEAVY, in an official capacity,<br><br>Appellant,<br><br>v.<br><br>THE ALASKA LEGISLATIVE COUNCIL, on behalf of THE ALASKA STATE LEGISLATURE,<br><br>Appellee. | Supreme Court No. S-18003<br><br>Superior Court No. 1JU-20-00938 CI<br><br>O P I N I O N<br><br>No. 7567 – November 12, 2021 |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Juneau, Philip M. Pallenberg, Judge.

Appearances: Margaret Paton Walsh, Assistant Attorney General, Anchorage, Janell Hafner, William E. Milks, Assistant Attorneys General, and Treg R. Taylor, Attorney General, Juneau, for Appellant. Megan A. Wallace, Hilary Martin, and Marie Y. Marx, Alaska State Legislature, Legislative Affairs Agency, Division of Legal and Research Services, Juneau, for Appellee.

Before: Winfree, Maassen, Carney, and Borghesan, Justices, and Fabe, Senior Justice.[*]  [Bolger, Chief Justice, not participating.]

MAASSEN, Justice.

## I.    INTRODUCTION

Under the Alaska Constitution, many executive positions subject to appointment by the governor — including agency heads and members of boards and commissions — require legislative confirmation.  This case concerns the effect of the Alaska Legislature's failure to exercise its confirmation power during the disruptions in regular government activity due to the COVID-19 pandemic.  The legislature relies on a preexisting statute and a 2020 modification of it to assert that its failure to act is the same as a denial of confirmation for all those appointees, with the consequence that they could not continue to serve as recess appointments.  The governor argues that his appointees remain in office and continue to serve until the legislature votes on their confirmation, one way or the other, in joint session.  The superior court granted summary judgment to the legislature, and the governor appealed.

In April 2021 we considered the appeal on an expedited basis and reversed the superior court's judgment in a brief order.  We concluded that the laws defining legislative inaction as tantamount to rejection violate article III, sections 25 and 26 of the Alaska Constitution, which require that the legislature consider a governor's appointees in joint session.  This opinion explains our reasoning.

---

[*]    Sitting by assignment made under article IV, section 11 of the Alaska Constitution and Alaska Administrative Rule 23(a).

## II.    FACTS AND PROCEEDINGS

### A.    Legal Background

The Alaska Constitution directs that "[a]ll executive and administrative offices, departments, and agencies of the state government and their respective functions, powers, and duties shall be allocated by law among and within not more than twenty principal departments, so as to group them as far as practicable according to major purposes."[1]  Each of these "principal departments" is headed by either "a single executive"[2] or "a board or commission."[3]  The appointment process is the same in each case.  Under article III, section 25, an individual named to head a principal department as "a single executive" "shall be appointed by the governor, subject to confirmation by a majority of the members of the legislature in joint session."  And under article III, section 26, "[w]hen a board or commission is the head of a principal department or a regulatory or quasi-judicial agency, its members shall be appointed by the governor, subject to confirmation by a majority of the members of the legislature in joint session."

The legislature has further defined by statute the process for confirming these appointees.  Alaska Statute 39.05.080(3) provides, among other things, that a "person whose name is refused for appointment by the legislature" may not hold an interim appointment while the legislature is in recess.  The statute also provides that the effect of legislative inaction in the confirmation context is "tantamount to a declination

---

[1]    Alaska Const. art. III, § 22.

[2]    *See id.* § 25.

[3]    *See id.* § 26.

of confirmation."[4]  The central legal question in this case is whether this latter provision violates article III, sections 25 and 26 of the Alaska Constitution.

## B.  Facts

In 2020, during the Second Regular Session of the Thirty-First Alaska State Legislature, Governor Mike Dunleavy presented over 90 appointees to the legislature for confirmation.[5]  Soon after, the global COVID-19 pandemic disrupted the normal functioning of government.  In March 2020 the governor declared a public health emergency.[6]

Later in the month the legislature, uncertain about when the pandemic would allow it to physically meet, passed legislation effectively extending the deadline for confirmation of the governor's appointees beyond the end of the regular session.[7]  House Bill 309 allowed the Second Session of the Thirty-First Alaska State Legislature to act on appointments "at any time."[8]  It overrode the statutory deadline of

---

[4]  AS 39.05.080(3) ("Failure of the legislature to act to confirm or decline to confirm an appointment during the regular session in which the appointment was presented is tantamount to a declination of confirmation on the day the regular session adjourns.").

[5]  *See* 2020 House Journal 1528-37.

[6]  Office of Governor Mike Dunleavy, Governor Issues Public Health Disaster Emergency Declaration for COVID-19 (Mar. 11, 2020), https://gov.alaska.gov/newsroom/2020/03/11/governor-issues-public-health-disaster-emergency-declaration-for-covid-19/; *see* AS 26.23.020(c) (granting governor power to declare public health emergencies).

[7]  Ch. 9, SLA 2020 (H.B. 309); ch. 10, SLA 2020 (S.B. 241).  The legislation enacted only uncodified laws; we refer to the laws by their bill numbers for ease of reference.

[8]  Ch. 9, § 1(a)(1), SLA 2020.

AS 39.05.080(3) by making the failure to act on confirmations by the end of the legislative session "*not* tantamount to a declination of confirmation" until the earlier of January 18, 2021, or 30 days after either the expiration of the governor's March public health emergency order or a proclamation that the emergency no longer existed.[9] Senate Bill 241 extended the governor's declaration of a public health emergency to November 15, 2020. The legislature then went into extended recess, having confirmed no appointees.

The governor's public health emergency declaration expired on November 15. Under H.B. 309, the legislature's failure to act on the governor's nominations became "tantamount to a declination of confirmation" on December 15.[10] The next day the governor asserted in letters to the senate president and the speaker of the house that his appointees would "continue to serve under valid appointments" and that he was "exercising [his] constitutional authority under the Alaska Constitution, article III, Section 27" — the recess appointment clause — "to continue their appointments."

C. **Proceedings**

In December 2020 the Legislative Council filed a complaint against the governor in superior court. The Legislative Council requested a declaration that the governor had violated AS 39.05.080, H.B. 309, and article III, sections 25 and 26 of the Alaska Constitution, and that his attempt to continue the appointments beyond the

---

[9]      *Id.* § 1(b) (emphasis added).

[10]      In their superior court pleadings both parties cited December 16 as the date on which the appointments were deemed declined under H.B. 309, but the superior court calculated the effective date as December 15. The Legislative Council uses this date in its brief in this appeal, whereas the governor continues to use December 16. Like the superior court we do not consider this difference critical, but like the superior court we calculate December 15 to be the date confirmation was considered denied.

deadlines provided by law was unlawful. The Legislative Council also requested injunctive relief prohibiting the governor both from continuing the appointments and from reappointing these persons to the same positions before the next legislature convened. The governor, in his answer and counterclaim, argued that the laws the Legislative Council claimed he violated — AS 39.05.080(3) and H.B. 309 — themselves violated article III, sections 25 and 26. He argued that his appointees were never lawfully rejected and, in the alternative, that he had validly exercised his recess appointment power to reappoint them. The governor and the Legislative Council filed cross-motions for summary judgment.

In February 2021 the superior court granted the Legislative Council's motion, deciding that AS 39.05.080 and H.B. 309 were constitutional, the appointees had therefore been effectively rejected by the legislature, and they were ineligible for recess appointment. The court entered a final declaratory judgment for the Legislative Council.

The governor appealed to this court and asked for expedited consideration, which we granted. On April 8, 2021, following oral argument, we issued an order reversing the superior court's summary judgment order and vacating the final judgment. We concluded that AS 39.05.080(3) violated the Alaska Constitution, article III, sections 25 and 26.

## III.  STANDARD OF REVIEW

"We review a grant of summary judgment de novo and will affirm the judgment if there are no contested issues of material fact and if the moving party is entitled to judgment as a matter of law."[11]  "We apply our independent judgment to

---

[11]    *Alaskans for a Common Language, Inc. v. Kritz*, 170 P.3d 183, 189 (Alaska 2007).

questions of constitutional law and review de novo the construction of the Alaska and federal Constitutions."[12]

## IV.    DISCUSSION

### A.    The Alaska Constitution Does Not Authorize The Legislature To Define Legislative Inaction On The Governor's Appointments As The Equivalent Of Rejection.

The first challenged law on this appeal is the last sentence of AS 39.05.080(3), which reads: "Failure of the legislature to act to confirm or decline to confirm an appointment during the regular session in which the appointment was presented is tantamount to a declination of confirmation on the day the regular session adjourns." The second challenged law is the legislature's attempt to adapt this statutory mandate to the circumstances of the COVID-19 pandemic, providing in H.B. 309 that the legislature's failure "to confirm or decline to confirm an appointment presented by the governor during the Second Regular Session of the Thirty-First Alaska State Legislature" is not "tantamount to a declination of confirmation" until later dates as dictated by the public health emergency.[13] The superior court determined that these provisions were constitutional and that the governor's slate of appointees was therefore constructively rejected by the legislature's failure to act on it. The governor argues that the provisions are unconstitutional and that his appointees could therefore continue to serve until the legislature affirmatively decided whether to confirm their appointments.

"A party raising a constitutional challenge to a statute bears the burden of demonstrating the constitutional violation. A presumption of constitutionality applies,

---

[12]    *Id.*

[13]    H.B. 309, ch. 9, §§ 1(a)-1(b), SLA 2020.

and doubts are resolved in favor of constitutionality."[14] The starting point for our analysis of a constitutional question not directly controlled by precedent is the plain text of the constitutional provision, as clarified by its drafting history.[15] Applying these rules we conclude that the Constitution's plain text, as supported by its drafting history, requires a joint session vote to either confirm or reject a governor's appointees. Alaska Statute 39.05.080(3) and H.B. 309, by defining legislative inaction to mean a denial of confirmation, nullify the requirement of a joint session vote. We therefore conclude that AS 39.05.080(3) and H.B. 309's "tantamount to a declination" provisions are unconstitutional.[16]

### 1.    The Constitution's plain text requires a joint session vote.

"Our analysis of a constitutional provision begins with, and remains grounded in, the words of the provision itself."[17] "Unless the context suggests otherwise,

---

[14]    *Alaskans for a Common Language*, 170 P.3d at 192 (quoting *State, Dep't of Revenue v. Andrade*, 23 P.3d 58, 71 (Alaska 2001)).

[15]    *Forrer v. State*, 471 P.3d 569, 585 (Alaska 2020) (citing *Wielechowski v. State*, 403 P.3d 1141, 1146 (Alaska 2017)).

[16]    The governor also argues that even if rejection by inaction is constitutional, AS 39.05.080(3)'s limitation on recess appointments still violates the Constitution, meaning that he was still able to use his recess powers to reappoint any appointees after rejection. Because rejection by inaction is unconstitutional, none of the governor's appointees were in fact rejected; the governor had no need to fall back on his recess appointment powers. Our conclusion that the final sentence of AS 39.05.080(3) is unconstitutional resolves this case, so we do not address either party's arguments on recess appointments.

[17]    *Wielechowski*, 403 P.3d at 1146 (quoting *Hickel v. Cowper*, 874 P.2d 922, 927-28 (Alaska 1994)).

words are to be given their natural, obvious and ordinary meaning."[18] "We are not vested with the authority to add missing terms or hypothesize differently worded provisions . . . to reach a particular result."[19]

The governor relies on the plain language of sections 25 and 26 for his argument that appointees continue to serve until the legislature affirmatively votes to reject their appointments. He points to the phrase "subject to confirmation by a majority of the members of the legislature in joint session" and argues that the delegates "intended that confirmation would turn on a joint session majority vote."[20] He argues that "[c]onfirmation and declination are simply two sides of the same coin"; both are results of a process that can "necessarily only be effectuated by a vote."

We agree with the governor's analysis. Both of the Constitution's confirmation provisions, article III, sections 25 and 26, declare that appointments are "subject to confirmation *by a majority of the members of the legislature in joint session*."[21] The provisions' text dictates the manner in which confirmation must be done: by majority vote in joint session.

The Legislative Council argues that article III's plain language requires a joint session vote only for confirmation, not declination. But we believe this to be an oversimplification of the Constitution's text. Confirmation may be defined as the successful result of a confirmation vote — an interpretation the Legislative Council

---

[18] *Hammond v. Hoffbeck*, 627 P.2d 1052, 1056 n.7 (Alaska 1981) (quoting *Cty. of Apache v. Sw. Lumber Mills, Inc.*, 376 P.2d 854, 856 (Ariz. 1962)).

[19] *Wielechowski*, 403 P.3d at 1146 (alteration in original) (quoting *Hickel*, 874 P.2d at 927-28).

[20] Alaska Const. art. III, §§ 25-26.

[21] *Id.* (emphasis added).

appears to advance — but it may also be defined as the process by which an appointee is determined to be either confirmed *or* rejected. Confirmation as a process is a check on a governor's appointment power.[22] Because the Constitution describes the governor's appointment powers as "subject to" confirmation, it is clear to us that "confirmation" in this sense is the check, or the process of confirmation, rather than the result of that process.[23] And the Constitution mandates that this process — whether it results in confirmation or rejection — be done by joint session vote.

The Legislative Council argues that AS 39.05.080(3) and H.B. 309 merely establish procedures for rejection and therefore do not conflict with the Constitution's plain language. But although the legislature may set out its own procedure when the Constitution is silent on process, the Constitution is not silent here: the phrase "confirmation by a majority of the members of the legislature in joint session" is descriptive enough for us to consider it a mandate. As we stated in *Bradner v. Hammond*, "[s]ections 25 and 26 of [a]rticle III describe the outer limits of the legislature's confirmation authority."[24] Allowing inaction to substitute for a joint session

---

[22]     *See Bradner v. Hammond*, 553 P.2d 1, 7 (Alaska 1976) ( "[C]onfirmation is . . . a part of the executive power of appointment which has in turn been delegated in some specific instances by constitution to the legislative branch of government." (citations omitted)).

[23]     Alaska Const. art. III, §§ 25-26. *See Check*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "check" as "[t]o control or restrain" and defining "subject" as "[u]nder the power of dominion of another," "[e]xposed, liable, or prone," or "[d]ependent on or exposed to (some contingency); esp. being under discretionary authority"). Appointment is controlled by confirmation as a check, while confirmation as a result merely affirms the governor's appointment. The Constitution's plain language imposes a check.

[24]     553 P.2d at 7 ("[W]e conclude that [s]ections 25 and 26 mark the full reach
(continued...)

vote pushes beyond those "outer limits."

The Legislative Council also argues that the governor's position requires adding language to the Constitution, because under his reading appointments are "subject to confirmation *or declination*" by a majority of the members of the legislature in joint session. The Legislative Council argues that adding these words to article III, sections 25 and 26, "would require a complete restructuring of the established procedure for legislative confirmation and upset the system of checks and balances that has been in existence since before statehood." The Legislative Council is correct in that requiring joint session action to reject an appointee means that appointments continue indefinitely unless and until the legislature acts to decline them. But this is not inconsistent with our prior case law or other constitutional provisions.[25] Nor does it require adding a term to the Constitution as long as we recognize that confirmation is the process by which an appointment may be either confirmed or rejected — the procedural check on the governor's appointment power.

In sum, because the rejection-by-inaction language of AS 39.05.080(3) and H.B. 309 conflicts with the Constitution's joint session requirement, those provisions of the laws are unconstitutional.

---

[24] (...continued)
of the delegated, or shared, appointive function to Alaska's legislative branch of government.").

[25] We have previously described confirmation as a veto power that occurs after appointment. *See Cook v. Botelho*, 921 P.2d 1126, 1130 n.4 (Alaska 1996) ("Confirmation occurs after appointment. . . . '[T]his power to confirm actually is more in the nature of a power to veto the appointment after the fact.' " (quoting *State ex rel. Todd v. Essling*, 128 N.W.2d 307, 313 (Minn. 1964))).

## 2. Constitutional history shows that the delegates intended a confirmation process involving a joint session vote.

"Legislative history and the historical context, including events preceding ratification, help define the constitution."[26] The governor argues that the delegates' discussions during Alaska's Constitutional Convention show that they intended confirmation to "turn on a joint session majority vote." Again we agree with the governor's position.

The concept of joint session deliberations came up repeatedly during the convention debates about the confirmation process. It originated with the drafters of the article on the judiciary, who applied it first to "the appointment of the lay members to the judicial council."[27] When Delegate Victor Rivers presented the article on the executive, he explained his committee's deliberate decision to also adopt the joint session confirmation process:

> We vest in the governor the appointive power for the heads of these departments. That is subject to confirmation by the houses of the legislature meeting in joint session. All the way through [this article] you will note that we have given the power of approval of the governor's appointments to a joint session of the legislature. We did so after checking with the department on the legislative which was following a similar procedure in the matter of approval of appointments. I might also add that the approval of appointments has been done in

---

[26] *Wielechowski v. State*, 403 P.3d 1141, 1147 (Alaska 2017) (quoting *State v. Ketchikan Gateway Borough*, 366 P.3d 86, 90 (Alaska 2016)).

[27] 3 Proceedings of the Alaska Constitutional Convention (PACC) 2177 (Jan. 14, 1956) (statement by Delegate George Sundborg).

Alaska in that manner for many years by a joint session of both houses.[28]

A day later, in further discussions of the executive article, Delegate Rivers suggested to the convention that "the body go on record unanimously as to what method they desire to approve in confirming appointments" across the board, rather than having to decide on a confirmation process every time they discussed an executive appointment.[29] He asked "unanimous consent that this group express as a policy the intent that approval of appointments shall be confirmed by legislatures in joint session and that we will correct our proposals to conform to that policy."[30]

Several delegates objected, contending that joint session requirements ran contrary to the idea of a bicameral legislature and that confirmation "by the advice and consent of the senate" might therefore be a better choice.[31] But when Delegate Maynard Londborg asked for "one good reason why we should run it with both houses," he got a number of responses.[32] Delegate Thomas Harris suggested that if confirmation were left to the 20-member senate it could become bogged down in horse-trading:

> [T]he senate is going to get together and say, "Well, if you will appoint this man, I'll help you and you help me, and we'll slice it up like a piece of pie and we'll all get our

---

[28]     *Id.* at 1988 (Jan. 13, 1956).

[29]     *Id.* at 2177 (Jan. 14, 1956).

[30]     *Id.* at 2178.

[31]     *See id.* at 2170-72, 2177-81. Delegate Maurice Johnson, for example, argued that "we have adopted a bicameral legislature and we ought to operate as one." *Id.* at 2172.

[32]     *Id.* at 2180.

friends in." That's what we didn't want. We want the governor to make the appointments, not the senate.[33]

Delegate Robert McNealy had the perhaps less cynical view that involving both houses would make it more likely there would be a legislator with personal knowledge of an appointee to help shape the consensus:

> [Y]our representatives will be elected from 24 representative districts and it may be that one of the governor's appointees may be next door or right in the bailiwick of one of the representatives [whereas the appointee] might live at some little distance from one of the senators, and I think it's a certainty that every member of the house of representatives should know . . . anyone that is appointed from his particular district, . . . and would [therefore] be able to advise and vote intelligently and in that manner assist the senate in this joint confirmation.[34]

And Delegate John McNees added that "an appointment by your executive department and a confirmation by your legislature as a total would mean the truest reflection of your entire elective thinking."[35] These arguments prevailed, as the delegates ultimately agreed with Delegate John Hellenthal's motion that "it shall be the policy of this body that such confirmation be made by both houses of the legislature jointly assembled."[36]

The Legislative Council argues, however, that the delegates "did appear to recognize that inaction would mean rejection." It notes language proposed during the discussion of recess appointments that seemed to equate inaction with rejection by implying that a legislature's failure to act on an appointment would create a vacancy

---

[33]    *Id.*

[34]    *Id.* at 2181.

[35]    *Id.*

[36]    *Id.* at 2185-86.

requiring a recess appointment.[37]  But this proposal was not adopted.  Delegate Victor Rivers moved successfully to withdraw it, and Delegate Vic Fisher supported the move by explaining that there was "presently . . . a law to this effect in our statute books" and it therefore did not need to be included in the Constitution:  "I think that the subject can be very adequately covered by legislation."[38]   Delegate Mildred Hermann agreed, explaining that "the mere statement that this is the law that we have at the present time is sufficient to describe it as a statutory measure and as a statutory measure it does not belong in the constitution."[39]

As the law to which the delegates were referring, the Legislative Council identifies AS 39.05.080's predecessor, a territorial statute that was carried over into statehood and recodified as AS 39.05.080.[40]  But this statute did not define legislative inaction as equivalent to rejection until its amendment in 1964.[41]  Nothing about the constitutional delegates' discussion of the issue in 1956 indicates that this is what they had in mind.

---

[37]     Alaska Constitutional Convention Committee Proposal 10a, at 8 (Jan. 12, 1956) ("After the end of the session no ad interim appointment to the same office shall be made unless the Governor shall have submitted to the Senate a nomination to the office during the session and the Senate shall have adjourned without confirming or rejecting it.  No person nominated for any office shall be eligible for an ad interim appointment to such office if the nomination shall have failed of confirmation by the Senate.").

[38]     3 PACC 2264 (Jan. 16, 1956).

[39]     *Id.* at 2265.

[40]     The territorial statute was ch. 64, § 4, SLA 1955.

[41]     *Compare* ch. 64, § 4, SLA 1955, *with* ch. 1, § 3, 1964.

The Legislative Council also argues that the delegates' discussion does not reveal any intent to limit the legislature's power to establish its own confirmation procedures. It points out that the delegates, while declining to include a "detailed procedure" for confirmations in the Constitution, were open to the idea of defining it by statute. We do not disagree that procedural details were left for later legislation, and that AS 39.05.080 filled in some of these details;[42] but the legislature could not undo by statute the constitutional requirement that confirmation be "by a majority of the members of the legislature in joint session."[43]

The Legislative Council also cites *Munson v. Territory of Alaska*,[44] a territorial case, to support its assertion that the framers intended legislative inaction to amount to rejection. The federal district court in *Munson* held that "the failure of the legislature to act on [an appointee's] 'appointment' is, in effect, rejection."[45] The Legislative Council argues that this shows a longstanding legal history in Alaska of treating inaction as rejection in the confirmation context. But *Munson* was decided after the constitutional convention; the framers could not have had the case in mind when they were discussing the confirmation process.[46] And because *Munson* precedes statehood,

---

[42]    For example, AS 39.05.080(1) requires that the governor present appointees' names "within the first 15 days after the legislature convenes in regular session"; section .080(2) requires "the presiding officer of each house" to then "assign the name of each appointee to a standing committee of that house for a hearing, report, and recommendation."

[43]    Alaska Const. art. III, §§ 25, 26.

[44]    16 Alaska 580 (D. Alaska 1956).

[45]    *Id.* at 590.

[46]    The convention took place between November 1955 and February 1956.
(continued...)

it lacks any sort of constitutional analysis that would make it persuasive to us now. Whether or not *Munson* shows a general pre-statehood understanding that inaction amounts to rejection, both the plain text of the Constitution and the framers' discussion evidence a different intent.[47]

If anything, the constitutional convention shows Alaska's break with other jurisdictions' approach. A benefit of the state's small population was the hope that a joint session of both houses of the legislature would be more likely to include legislators who knew the appointees personally and could comment on their qualifications, thus making more informed decisions about whether to confirm and ensuring that the entire state was represented in the process.[48] Rejection by inaction negates every benefit of a joint session; it casts no reflection whatsoever on the appointees' fitness for the positions to which they were appointed, and it is especially difficult to see how it could be read as a legislative judgment that they were unfit to serve as recess appointments. A failure to act also may lead, as it did here, to a large number of critical vacancies in the executive

---

[46] (...continued)
*See* 1 PACC 1 (Nov. 8, 1955); 3 PACC 3962 (Feb. 6, 1956). *Munson* was decided in December 1956. *See* 16 Alaska 580.

[47] For the same reason we reject the Legislative Council's reliance on cases from other jurisdictions. *See, e.g.*, *State ex rel. Oberly v. Troise*, 526 A.2d 898, 899 (Del. 1987) (holding that governor's nominations were invalid after a period of legislative inaction); *State ex rel. McCarthy v. Watson*, 45 A.2d 716, 724 (Conn. 1946) (deeming inaction as rejection despite express statutory mandate to act); Uniform Rules of the United States Senate, Rule XXXI(6) (providing that nominations neither confirmed nor rejected within a session may not be again considered unless the president makes the same nomination).

[48] *See* 3 PACC 2181 (Jan. 14, 1956).

branch, effectively weakening it while serving no articulable purpose consistent with the framers' intent.[49]

We therefore conclude that AS 39.05.080(3) and H.B. 309's "tantamount to declination" provisions violate article III, sections 25 and 26 of the Alaska Constitution.

## V.      CONCLUSION

We REVERSE the superior court's summary judgment order and VACATE the final judgment.

---

[49]      The governor submitted the affidavit of Gina Ritacco, Director of Boards and Commissions for the Office of the Governor, claiming that if the legislature lawfully rejected the governor's appointees — and thus disqualified them from recess appointments — boards and commissions including the Medical Board, Board of Fisheries, and Commission for Human Rights would be left without a legal quorum to conduct business, while agencies including the Department of Revenue, the Public Defender Agency, and the Attorney General's Office would be left without an appointed commissioner or agency head.