(92 Misc. Rep. 573)

### PEOPLE v. WALSH (two cases).

### PEOPLE v. NEWELL et al.

(Supreme Court, Criminal Term, Erie County. November, 1915.)

1. INDICTMENT AND INFORMATION ⬤➡144—EVIDENCE—COMPETENCY—DISMISSAL OF INDICTMENT.

Indictments found on letters read before the grand jury, on newspaper reports of a raid unlawfully made by the grand jury, on statements not under oath by a grand juror, and on what the grand jurors saw when they made the raid, being found on incompetent evidence, should be dismissed.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 488; Dec. Dig. ⬤➡144.]

2. GRAND JURY ⬤➡33—RIGHT TO VIEW PREMISES.

The grand jury has no right on its own motion to visit premises for the purpose of an official inspection.

[Ed. Note.—For other cases, see Grand Jury, Cent. Dig. §§ 70, 71, 79, 80; Dec. Dig. ⬤➡33.]

3. INDICTMENT AND INFORMATION ⬤➡144—POWER TO DISMISS—INCOMPETENT EVIDENCE.

The court has inherent power, of which it cannot be deprived by statute, to dismiss indictments shown, on a motion to inspect the minutes of the grand jury, to have been found on incompetent evidence, though the minutes fail to disclose such evidence.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 488; Dec. Dig. ⬤➡144.]

Separate indictments were found against James W. Walsh and against Fred Newell and others, and they moved to inspect the minutes of the grand jury and certain letters alleged to be the basis for the finding of the indictments. Indictments dismissed, and cases directed to be investigated by the next grand jury.

Wesley C. Dudley, of Buffalo, for the People.

Willard H. Ticknor and Thomas L. Newton, both of Buffalo, for defendants.

MARCUS, J. This motion is to inspect the minutes of the grand jury and also certain letters which are claimed to be the basis for the finding of the indictments in the above actions. The moving papers show that the grand jury seriously considered, not only the open complaints of individuals and newspapers, but also every communication that came to its notice, whether anonymous or otherwise; that

certain newspapers contained highly prejudicial reports of the raid by the grand jury on "The Hague," and other highly prejudicial reports which resulted in the finding of the indictments herein, which were read by one grand juror and were in the hands of others of the grand jury before the indictments were found by it; that one grand juror openly stated before the grand jury—not under oath—that he had made bets on the horses at "The Hague," but had not collected the money thereon; that six of the grand jury, in company with a deputy sheriff, without warrant or any process of law, about 3 o'clock in the afternoon, conducted a raid on "The Hague" by causing a door therein to be broken through and arresting in a rear room therein about 35 people, including the defendant Walsh, placed them in a patrol wagon in the presence of, over 200 people, and restrained all of them, except the defendant Walsh, until they testified before the grand jury, which action was a part of the proceedings resulting in the finding of all the indictments herein.

[1] It is urged that the indictments were the result of undue influence brought to bear on the grand jury by their consideration of volunteered communications, unofficial in character, by letters, some signed, some anonymous, and by newspaper articles, the purport of which urged them to start upon their own initiative and authority a plan for the discovery of gambling, because of the failure of other authorities to procure the necessary evidence. If a grand jury admits and confesses that "it has seriously considered, not only open complaints of individuals and newspapers, but also every other communication that has come to its notice, whether anonymous or otherwise," all of which is in violation of law and contrary to every rule and reason known as legal evidence, this court will emphatically put its stamp of disapproval upon such a course. No grand jury, however zealous to perform its duty, should forget that it is an inquiring body, charged and sworn to investigate crime upon the *oath of witnesses*. If a grand juror has knowledge of facts, he must testify under oath in reference thereto; and while it is clear that information was submitted by grand jurors, the record discloses that no grand juror testified under oath with reference thereto.

The letters read before the grand jury and considered by them, the newspaper reports of the raid on "The Hague" by the grand jury, the statements not under oath by one of the grand jurors that he had made bets on horses at "The Hague," but had not collected on such bets, and what the grand jurors saw in "The Hague," could not be received by the grand jury as legal evidence, and to that extent the indictments were found on improper and incompetent evidence.

[2] Aside from the illegality of some members of the grand jury breaking in the door of, "The Hague" with the aid of a deputy sheriff, without a warrant or other process of law, which undoubtedly rendered each of the persons aiding in the act liable both civilly and criminally, the subject has had judicial interpretation in the case of Wyatt v. People, 17 Colo. 252, 28 Pac. 961, in the following language:

"We are told that grand juries cannot inspect premises or property wherein or in connection with which a crime is alleged to have been committed. The proposition is not without force when the action is sought to be taken in

connection with private premises, or as to personal property of nonconsenting private individuals. The official deliberations of the grand jury take place in the room or quarters provided for the purpose. Its action almost always rests upon the testimony of witnesses and papers and documents produced before it in response to subpœnas. It is very rare indeed that it desires as a body to examine the situs of an alleged criminal offense. And it is exceedingly difficult to find judicial declarations either admitting or denying its power of inspection in the absence of statute. * * * But we are strongly of the opinion that the grand jury has no more right to visit premises for the purpose of official inspection upon its own motion than the petit jury. Such proceedings, being unusual and extraordinary, must, unless otherwise provided by statute, first have the sanction of the court. * * *"

The charge to the grand jury of Mr. Justice Field, in the United States Circuit Court, District of California (2 Sawyer, 667, Fed. Cas. No. 18, 255), often quoted, again will be instructive in so far as the action of this grand jury is concerned:

"All such communications are calculated to prevent and obstruct the due administration of justice, and to bring the proceedings of the grand jury into contempt. 'Let any reflecting man,' says a distinguished judge, 'be he layman or lawyer, consider the consequences which would follow, if every individual could at his pleasure throw his malice or his prejudice into the grand jury room, and he will of necessity conclude that the rule of law which forbids all communications with grand juries, engaged in criminal investigations, except through the public instructions of courts, and the testimony of sworn witnesses, is a rule of safety to the community. What value can be attached to the doings of a tribunal so to be approached and influenced? How long would a body, so exposed to be misled and abused, be recognized by free men as among the chosen ministers of liberty and security? The recognition of such a mode of reaching grand juries would introduce a flood of evils, disastrous to the purity of administration of criminal justice, and subversive of all public confidence in the action of these bodies.'"

In the case of People v. Sellick, 4 N. Y. Cr. R. 329, which arose in Erie county, it was said by the court:

"Still we are entirely satisfied that such acts are decidedly improper, because, if one person who honestly believes an indictment *should* be found may write letters to and hold conversations with, grand jurors urging them to investigate a case to that end, may not any other person who honestly believes an indictment should *not* be found do the same things to that end? And if this may be done by *one* person, it may be done by all; and if it may be done with one grand juror, it may be done with all; and what a spectacle would this present, giving the right to every person, as soon as a grand jury is drawn, to labor with each individual member thereof, at his home, upon the street, or in place of business, by speech, by writing, and by printing, to adopt the views of every such person, either to find, or not to find, an indictment in each particular case. Certainly no value could be attached to the doings of a tribunal so to be approached and influenced, so to be abused and misled. And we think in a case where such circumstances are shown to exist, where such communications as are shown in this case to have been made to the members of the grand jury, that it should be *conclusively presumed* that the grand jury were influenced by them, and that the affidavits of individual members of the grand jury should not be heard to contradict such presumption, or to show that they were not, in fact, so influenced. And, further, we think that no court ought to allow any person to be put upon trial upon an indictment found, where such influences are shown to have been brought to bear upon the jury, and that a motion to dismiss an indictment, found under such circumstances, should be granted. So that, if no other ground for this motion existed, we should feel it our duty to set aside or dismiss these indictments."

[3] An examination of the minutes of the grand jury which, since this motion, have been inspected by the court, would reveal nothing which would aid the petitioners upon this motion, since no record is contained in said minutes on any subject referred to in the affidavits in this proceeding. And while this motion is made for the purpose of inspecting the minutes, this court can nevertheless assert and exercise the power to set aside indictments whenever it has been made to appear that they have been found without evidence or upon illegal and incompetent testimony. This power is based upon the inherent right and duty of the court to protect the citizens in their constitutional prerogatives and to prevent oppression or persecution. It is a power which the Legislature can neither curtail nor abolish, and to the extent that legislative enactments are designed to effect either of these ends, they are unconstitutional. People v. Glen, 173 N. Y. 395, 66 N. E. 112.

The action of the grand jury should not be countenanced by the court. It is against and in violation of all accepted authority. There yet remains a margin of distinction to be recognized between the desire to perform a duty and the methods employed in its accomplishment. The procedure adopted is repugnant to our system, and conflicts with orderly administration of criminal law. It violates the law in an attempt to enforce it, and substitutes for experienced and time-honored cures what suggests hastily prepared nostrums. Indeed, it has been said by great authority:

"When the court does not deem the matter of sufficient importance to call your attention to it, and the district attorney does not think it expedient to submit the matter to your consideration, and the private prosecutor neglects to proceed before the committing magistrate, we think it may be safely inferred that public justice will not suffer, if the matter is not considered by you."

In the opinion of the court a due regard for the proper administration of the criminal law requires that these indictments should be dismissed, and the case is sent to the next grand jury for investigation, when it will be assumed that no evidence will be received by them which would not be admissible on a trial.

Order granted dismissing indictments, and cases directed to be investigated by the next grand jury.