*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| THOMAS GARBER, | ) |
| | ) Supreme Court No. S-18611 |
| Appellant, | ) |
| | ) Superior Court No. 3AN-22-00001 GC |
| v. | ) |
| | ) O P I N I O N |
| SUPERIOR COURT, THIRD | ) |
| JUDICIAL DISTRICT, | ) No. 7797 – November 28, 2025 |
| | ) |
| Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, William F. Morse, Judge.

Appearances: Thomas Garber, pro se, Anchorage, for Appellant. Thomas P. Amodio, Reeves Amodio, LLC, Anchorage, for Appellee.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

HENDERSON, Justice.

## I.  INTRODUCTION

Article I, section 8 of the Alaska Constitution provides in part: "The power of grand juries to investigate and make recommendations concerning the public welfare or safety shall never be suspended." Although the power of grand juries to investigate and make recommendations does not provide individual people with the right to directly access the grand jury, it is natural that individuals may wish to do so.

Because the process for bringing concerns before the grand jury had previously been unclear, we amended the relevant Criminal Rule — Alaska Criminal Rule 6.1 — to define that process.

Here a man sought to present documents that he asserted were related to matters of public welfare or safety to the grand jury. He requested that the superior court provide the documents to the grand jury on his behalf so that the grand jury could conduct an investigation. The court rejected his request because it did not comply with the process provided in Rule 6.1.

The man now appeals, arguing that we lacked the authority to amend Rule 6.1. But the Alaska Constitution vests us with broad rule-making authority in this area. Our amendment of Rule 6.1 did not impermissibly limit the powers of the grand jury, but rather outlined a process for individuals to follow should they wish to present concerns to it. We therefore affirm the superior court's denial of the man's request to follow a different process.

## II.    FACTS AND PROCEEDINGS

### A.    Garber's Petition To The Superior Court

In 2022 Thomas Garber, a person who was not a member of a grand jury, approached a superior court judge and asked that he be allowed to present the grand jury with information relating to his concerns regarding the Office of Children's Services (OCS). The court initiated a case to address Garber's request, and it held a hearing in October 2022 to allow Garber "to describe in detail what he seeks to have the grand jury do."

During the hearing Garber referenced five child protection proceedings that he believed should have been further investigated by the Office of the Ombudsman.[1] When asked by the court to elaborate on the case he felt most appropriate

---

[1]    *See* AS 24.55.010-.340 (establishing the Office of the Ombudsman and the ombudsman's ability to investigate particular administrative acts of agencies).

for review by an investigatory grand jury, Garber referred to a family that OCS became involved with due to allegations of domestic violence. Garber expressed concern with OCS's removal of the children from their parents and with abuse that he indicated one of the children experienced in the foster care system. He believed that reports to OCS, the appointed guardian ad litem, and the court had gone unheeded. Garber indicated that he did not seek any criminal indictment from the grand jury, but rather for the grand jury to "identify deficiencies in certain statutes and policies, investigate patterns of crimes, or [investigate] patterns of behavior within [OCS]." The court inquired about how Garber's information or concerns should be presented to a grand jury and what would occur as a result. But the hearing time expired before Garber could conclude, so the court scheduled an additional hearing for a later date.

## B. Our Promulgation Of Alaska Criminal Rule 6.1(c) And The Court's Dismissal Of Garber's Petition

While Garber's request was pending before the superior court, we issued Alaska Supreme Court Order (SCO) 1993, which amended Rules 6 and 6.1.[2] The change pertinent to this appeal was the addition of a new Rule 6.1(c) and accompanying comments.[3] Rule 6.1(c) requires that private citizens wishing to bring concerns before the grand jury "direct [their] concerns to the Attorney General for consideration and for possible review and investigation." Rule 6.1(c) also provides a process to follow should there be concerns that the involvement of the prosecuting attorney (designated by the Attorney General) would create an appearance of impropriety or a conflict of interest.[4]

---

[2] Alaska Supreme Court Order (SCO) No. 1993 (Dec. 1, 2022).

[3] We note that since Garber's petition, we amended Alaska Criminal Rule 6.1(e) and (h). SCO No. 2000 (Feb. 6, 2023).

[4] Alaska Criminal Rule 6.1(c)(2) provides for notification and involvement of the superior court where "a grand jury investigation initiated by a citizen request concerns possible misconduct on the part of the prosecuting attorney or others in the Department of Law such that having the prosecuting attorney oversee the investigation would create an appearance of impropriety or a conflict of interest."

After we issued SCO 1993, the superior court vacated the continued hearing regarding Garber's petition and directed Garber to present his request to the Department of Law. The court explained that Rule 6.1(c) "defined how a citizen may request to have the grand jury investigate matters of public welfare or safety" and that a "citizen must present the request 'to the Attorney General for consideration and for possible review and investigation by a grand jury.' "

Garber subsequently requested that the Attorney General summon a grand jury to "[i]nvestigate OCS failures." Garber also appealed to us. The Department of Law thereafter notified him that it would not move forward with his request while this appeal was pending. Garber, however, represented during oral argument that the Department was indeed reviewing and considering his request. The Department also notified Garber that it intended to create a five-member panel to review proposals like his and provide a recommendation to the Attorney General for a final decision and that it intended to issue regulations to formalize this procedure for future cases.

We now consider Garber's appeal.

## III.  STANDARD OF REVIEW

"We use our independent judgment to review matters of constitutional or statutory interpretation."[5]  "We review a grant of summary judgment de novo, 'affirming if the record presents no genuine issue of material fact and if the movant is entitled to judgment as a matter of law.' "[6]

---

[5]  *State v. Planned Parenthood of the Great Nw.*, 436 P.3d 984, 991 (Alaska 2019) (citing *Premera Blue Cross v. State, Dep't of Com., Cmty. & Econ. Dev., Div. of Ins.*, 171 P.3d 1110, 1115 (Alaska 2007)).

[6]  *Sulzbach v. City & Borough of Sitka*, 517 P.3d 7, 13 (Alaska 2022) (quoting *Kelly v. Mun. of Anchorage*, 270 P.3d 801, 803 (Alaska 2012)). We note that the superior court argues, and Garber does not contest, that we should consider the matter as one in which the court granted summary judgment.

## IV.   DISCUSSION

As a preliminary matter, this appeal concerns only the superior court's denial of Garber's 2022 request for the court to provide information to the grand jury on his behalf.  While we observe that Garber has referenced additional parties and prior grand jury investigations in his briefing, the superior court's denial of Garber's 2022 petition is the only issue properly before us.[7]  Proceeding to the parties' arguments, we reject the superior court's argument raised on appeal that Garber must have exhausted his administrative remedies before he could bring his constitutional claim.  As to the merits of Garber's claim, we recognize that the Alaska Constitution vests us with broad rule-making authority, including the authority to make rules for the orderly administration of grand jury proceedings.  With this backdrop in mind, we look to the plain text of the Constitution, the intent of the framers, and relevant precedent to determine whether Rule 6.1(c) is consistent with article I, section 8 of the Alaska Constitution, and we determine that it is.

### A.     Garber Was Not Required To Exhaust His Administrative Remedies.

On appeal, the superior court suggests that Garber was required to exhaust his administrative remedies in order to pursue his constitutional argument.  We disagree.  The denial of Garber's petition by the superior court was not an administrative decision, making the exhaustion requirement in the context of administrative proceedings inapplicable here.[8]  We thus proceed to consider the merits of Garber's appeal.

---

[7]     Garber and the superior court (by and through appointed counsel) are the only parties in this proceeding.  Therefore, the denial of Garber's 2022 petition is the only issue properly before us.  *See* AS 22.05.010(a) ("[A] *party* has only one appeal as a matter of right from an action or proceeding commenced in either the district court or the superior court." (emphasis added)); Alaska R. App. P. 202(a).

[8]     *See Smart v. State, Dep't. of Health and Soc. Servs.*, 237 P.3d 1010, 1015 (Alaska 2010) (explaining that basic purpose of exhaustion requirement is to allow

**B.** **The Alaska Constitution Vests The Alaska Supreme Court With Broad Rule-Making Authority To Regulate Procedures Relevant To The Grand Jury.**

Article IV, section 15 of the Alaska Constitution provides that "the supreme court shall make and promulgate rules governing the administration of all courts," and "[i]t shall make and promulgate rules governing practice and procedure in civil and criminal cases in all courts." The Constitution thus vests us with broad rule-making authority regarding administration of the judiciary and procedures controlling various court proceedings. Although the judiciary seldom acts substantively within grand jury proceedings, it is the judiciary that calls and convenes the grand jury so that the body may perform its vital functions. We have long held that, in this sense, "[g]rand juries are an arm of the court system . . . [and] their operations are governed by the rules of administration, practice and procedure" promulgated pursuant to article IV, section 15.[9]

Garber does not argue that we should overrule this recognition of our broad rule-making authority. But he nonetheless asserts that our amendment of Rule 6.1 impermissibly interferes with the independence of the grand jury. For support, he cites the United States Supreme Court's decision in *United States v. Williams*.[10] In *Williams*, the Court rejected the Tenth Circuit's conclusion that it was authorized to regulate a federal grand jury because "the grand jury is an institution separate from the courts."[11] But *Williams* does not apply to state grand juries because the powers of

---

administrative agencies to correct their own errors without need for judicial intervention).

[9] *O'Leary v. Superior Ct., Third Jud. Dist.*, 816 P.2d 163, 170 (Alaska 1991).

[10] 504 U.S. 36 (1992).

[11] *Id.* at 47.

federal courts are derived from the Constitution of the United States,[12] whereas Alaska courts are subject to article IV of the Alaska Constitution.[13] When we previously considered this issue in *O'Leary v. Superior Court*, we observed that "nothing in the [Constitutional] [C]onvention debates . . . suggests that the delegates intended the grand jury to operate in a legal vacuum when exercising its power to investigate and recommend."[14] Again, Garber does not argue that we should overturn this precedent. In light of the broad rule-making authority vested in us by the Alaska Constitution, we reject Garber's suggestion that our promulgation or amendment of procedural rules improperly treads upon the independence of the grand jury.

Garber next argues that our amendment of Rule 6.1 to provide a process by which an individual may convey a concern to the grand jury usurps the power of the legislature. In particular, he argues that Rule 6.1(c) conflicts with AS 12.40.030 and AS 12.40.040. Alaska Statute 12.40.030 requires that "[t]he grand jury shall inquire into all crimes committed or triable within the jurisdiction of the court and present them to the court." And AS 12.40.040 requires a member of the grand jury who "knows or has reason to believe that a crime has been committed that is triable by the court" to "disclose it to the other jurors, who shall investigate it." Garber asserts that these statutes, in conjunction with article I, section 8 of the Alaska Constitution, authorize Alaskans to "petition for an investigative Grand Jury vote." But these statutes are inapplicable to Garber, because as he informed the superior court, he did not request that the grand jury issue a criminal indictment in this matter. Nor is he a current grand juror. And even if we interpreted AS 12.40.030 and AS 12.40.040 as Garber urges, the

---

[12] U.S. Const. art. III, § 1 ("The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish.").

[13] Alaska Const. art. IV, § 1 ("The judicial power of the State is vested in a supreme court, a superior court, and the courts established by the legislature.").

[14] *O'Leary*, 816 P.2d at 170.

legislature has expressly recognized that these statutes do not in any way curtail our broad rule-making authority and ability to provide for the orderly administration of grand jury procedures. In AS 12.85.010, the legislature recognized that "[t]he provisions of [Title 12] apply to all criminal actions and proceedings in all courts *except where* specific provision is otherwise made or where the Rules of Criminal Procedure adopted by the supreme court under its constitutional authority apply."[15] Our rule-making authority is therefore not limited by these statutes.

Garber's subsequent claim that Alaska Criminal Rule 6.1(c) violates the common law similarly fails because "when a statute or court rule has been enacted for the purpose of governing a matter that was once governed by a common-law rule, the statute or court rule supersedes the common-law rule."[16]

Finally, Garber appears to challenge the process we used in amending Rule 6.1. Consistent with our broad rule-making authority, we have exercised our discretion to establish a general procedure for considering proposed rule changes.[17] We have established a system by which any person may propose new rules or changes to the rules, which may be referred to the various rules committees throughout the state.[18] However, in accordance with our constitutional authority, we may expedite our process, particularly when we determine that immediate promulgation is necessary.[19]

---

[15]     AS 12.85.010 (emphasis added).

[16]     *Dominguez v. State*, 181 P.3d 1111, 1114 (Alaska App. 2008); *see also Dayton v. State*, 120 P.3d 1073, 1080 (Alaska App. 2005); *Dandova v. State*, 72 P.3d 325, 333 (Alaska App. 2003); *cf. Roberts v. State, Dep't of Revenue*, 162 P.3d 1214, 1220-21 (Alaska 2007) (recognizing that the legislature can "preclud[e] the development of common law exceptions"). We also observe that the Alaska Constitution vests the legislature with the power to change a court rule "by [a] two-thirds vote" of the House and Senate. Alaska Const. art. IV, § 15.

[17]     *See* Alaska Admin. R. 44.

[18]     *See* Alaska Admin. R. 44(b)-(e).

[19]     *See* Alaska Const. art. IV, § 15; Alaska Admin. R. 44(i).

Here, the process underlying our amendment of Rule 6.1 did not begin as an expedited one. In consultation with the Criminal Rules Committee, we began considering potential amendments of this nature — to Criminal Rules related to grand jury proceedings — in 2016. While those proposed amendments were pending, we observed that the lack of procedures related to investigative grand juries seemed to call for a uniform rule.

However as superior courts began taking inconsistent approaches to citizens' requests to initiate investigative grand juries, we deemed it necessary to develop a uniform process. Garber recognized this necessity in his briefing when he stated that our promulgation of Rule 6.1(c) "was an important development in defining a procedural framework for citizens requesting the grand jury to deliberate on matters of public concern." In fact, at times in his appeal, Garber seems not to object to our amendment of Rule 6.1 or our establishment of a procedure for bringing matters of public welfare or safety before the grand jury. Rather, at times he seems to argue merely that individuals wishing to convey information to an investigative grand jury should be able to do so through a judge rather than through consultation with the Attorney General's office.

Along those lines, Garber suggests that it was improper for us to consult with the Department of Law while considering the amendments to Rule 6.1, but his concern is unfounded. As the commentary to Rule 6.1(c) observes, while the court "convenes a grand jury" and provides clerical and logistical support, "grand jury sessions are led by and conducted by the Department of Law." Lack of consultation with the Department before promulgation of a procedure that must be executed by the Department would be contrary to the aim of the Criminal Rules to "secure simplicity in

procedure, fairness in administration and the elimination of unjustifiable expenses and delay."[20]

In sum, we conclude that it was within our constitutional authority to amend Rule 6.1 to provide for a uniform process by which individuals can seek to provide information concerning the public welfare and safety to the grand jury.

### C.   Alaska Criminal Rule 6.1(c) Does Not Violate The Anti-Suspension Clause Of Article I, Section 8 Of The Alaska Constitution.

The consistency of Rule 6.1(c) with article I, section 8 of the Alaska Constitution is supported by the text of the constitution, the framers' intent, and our precedent.  Garber contends that article I, section 8 prohibits the portion of Rule 6.1(c) that requires him to petition the Department when seeking to provide information to the grand jury.  Garber seems to advance two primary arguments to support this claim: (1) that the anti-suspension clause permits him to petition to the grand jury directly, without review by the Attorney General or the superior court, and (2) that Rule 6.1(c) is unconstitutional because it undermines the function of the grand jury and curtails the checks on government actions inherent to the system.

As the party raising a constitutional challenge, Garber "bears the burden to establish a constitutional violation."[21]  In interpreting the Alaska Constitution, we "will adopt a reasonable and practical interpretation in accordance with common sense based upon the plain meaning and purpose of the provision and the intent of the framers."[22]  "Moreover, because these are questions of law, we will consider precedent,

---

[20]   Alaska R. Crim. P. 2.

[21]   *Kohlhaas v. State*, 518 P.3d 1095, 1104 (Alaska 2022).

[22]   *State v. Alaska Legis. Council*, 515 P.3d 117, 123 (Alaska 2022) (quoting *Alaska Legis. Council v. Knowles*, 21 P.3d 367, 370 (Alaska 2001)) (internal quotation marks omitted).

reason, and policy."[23] "Legislative history and the historical context, including events preceding ratification," inform our interpretation of constitutional provisions.[24]

### 1. Alaska Criminal Rule 6.1(c) is consistent with the plain meaning of the text of Article I, Section 8.

Looking first to the text of the Alaska Constitution, we observe that our amendment of Rule 6.1, including subsection (c) that Garber complains of, is consistent with the plain meaning of article I, section 8. The anti-suspension clause of article I, section 8 provides: "[T]he power of grand juries to investigate and make recommendations concerning the public welfare or safety shall never be suspended."[25] Nothing within the constitutional text provides for an individual right to petition the grand jury.

Comparing the indictment clause of section 8 to the anti-suspension clause of that section reinforces this conclusion. The indictment clause addresses the right of an individual person, the accused, in relation to the grand jury by stating: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury."[26] However, unlike the indictment clause, the anti-suspension clause contains no reference to a person's individual rights.[27] And

---

[23] *Id.* (quoting *Alaska Legis. Council*, 21 P.3d at 370).

[24] *Wielechowski v. State*, 403 P.3d 1141, 1147 (Alaska 2017) (quoting *State v. Ketchikan Gateway Borough*, 366 P.3d 86, 90 (Alaska 2016)).

[25] Alaska Const. art. I, § 8.

[26] *Id.*; *see also Wassillie v. State*, 411 P.3d 595, 605 (Alaska 2018) ("We have repeatedly recognized the importance of this [individual] right, emphasizing that 'an accused is entitled, under Alaska law, to a decision *by a grand jury* that there is probable cause to hold him for trial.' " (emphasis in original) (quoting *Michael v. State*, 805 P.2d 371, 374 (Alaska 1991))).

[27] Alaska Const. art. I, § 8. ("The power of grand juries to investigate and make recommendations concerning the public welfare or safety shall never be suspended.").

while we have recognized that an individual constitutional right can exist without reference in the constitutional text to a "person,"[28] such an interpretation would be inapt here, where the anti-suspension clause speaks not to the rights of individual people, but to the power of grand juries as a collective whole to "investigate and make recommendations."[29]

Moreover, Rule 6.1(c) does not impermissibly suspend the grand jury's power. For a statute or court rule to create a "suspension" of a power, it must restrict that power's exercise. Nothing in Rule 6.1(c) limits the ability of the grand jury to request information and issue reports, and Rule 6.1(a) specifically recognizes the grand jury's constitutional authority.[30] Simply put, Rule 6.1(c) does not "suspend" the powers of the grand jury, because an individual person's ability to access the grand jury has never been within the scope of the grand jury's function. Stated another way — a rule such as Rule 6.1(c) does not implicate the anti-suspension clause, because the rule does not reach the activity that "shall never be suspended."[31]

### 2. Evidence of the framers' intent does not suggest that article I, section 8 prohibits Alaska Criminal Rule 6.1(c).

We routinely look to statements by the delegates at the Alaska Constitutional Convention in order to understand the intent of the framers when drafting

---

[28] *See, e.g.*, *Huffman v. State*, 204 P.3d 339, 344-45 (Alaska 2009); *Swanner v. Anchorage Equal Rts. Comm'n*, 874 P.2d 274, 281-83 (Alaska 1994); *accord* Alaska Const. art. I, § 4 ("No law shall be made respecting an establishment of religion, or prohibiting the free exercise thereof.").

[29] *See* Alaska Const. art. I, § 8.

[30] Alaska R. Crim. P. 6.1(a) ("A grand jury is constitutionally authorized to investigate and make reports and recommendations concerning the public welfare or safety.").

[31] Alaska Const. art. I, § 8.

the Alaska Constitution.[32]  To properly understand the context of those statements, we also look to Territorial practice.[33]  We therefore review the Territorial practice that informed the Constitutional Convention, in addition to the Convention history itself, for any further guidance regarding the application of article I, section 8 to the question here.

### a.   Territorial practice did not provide for a person to directly petition the grand jury.

Neither the Federal Rules of Criminal Procedure, nor the criminal code that regulated the Territorial grand jury, recognized or observed an established Territorial procedure that allowed a private citizen to petition a grand jury.[34]  Nor did the local District Court rules provide for or discuss such a concept.[35]

Under Territorial statute at the time of the Convention, the grand jury did have a limited investigative power into "every public prison in the Territory" and the "condition and management of the offices pertaining to the courts of justice in the Territory."[36]  And while a version of the Territorial statute existed prior to the

---

[32]   *See, e.g., Sagoonick v. State*, 503 P.3d 777, 782-83 (Alaska 2022); *Wassillie v. State*, 411 P.3d 595, 605-08 (Alaska 2018).

[33]   *See Wassillie*, 411 P.3d at 605.

[34]   *See* Fed. R. Crim. P. 6, advisory committee's note to 1944 adoption; 48 U.S.C. §§ 101-108 (1952) (establishing and regulating the judiciary for the Territory of Alaska).

[35]   Uniform Rules of the District Court for the Territory of Alaska (1947); Uniform Rules for the District Court of the District of Alaska (1953); Uniform Rules of the District Court for the District of Alaska (1956); Amended Uniform Rules of the District Court for the District of Alaska (1957); Amendments To Uniform Rules of the District Court for the District of Alaska (1959).

[36]   § 66-8-29 Alaska Compiled Laws Annotated (ACLA) (1949).  The grand jury also had the power to inspect the physical premises of prisons and court facilities and inspect records.  § 66-8-30 ACLA.

organization of the Territory of Alaska and originated from Oregon law,[37] no court had interpreted the breadth of that statute or determined whether a private citizen could petition the grand jury to conduct such an investigation. The absence of any reference to an individual right to petition the grand jury suggests that such a right was not contemplated at the time.

And while Territorial practice suggests that grand juries did conduct investigations, those investigations were facilitated by the other branches of government, not private citizens. For example, in 1953 a Territorial judge instructed a grand jury in Ketchikan to "investigate into conditions of vice and corruption existing in Ketchikan."[38] Among its findings, the grand jury's report found that the local district attorney had been "dominating the Grand Jury, [and] was obstructing justice," prompting the grand jury to seek his removal.[39] And after removal of that district attorney, the grand jury's "investigations were able to move forward in complete harmony with the District Attorney's Office."[40]

Our review of the historical record does not show that Territorial practice gave individuals a right to directly petition the grand jury. Rather, as is the case now, it appears that the executive branch and the judiciary facilitated the grand jury's exercise

---

[37] §§ 21-22, pt. II, Carter's Annotated Alaska Code (CAAC) (1900) (citing Laws Oreg., Oct. 19, 1864; Hill's Ann. Laws, §§ 1251-52); *see also* § 5185 Compiled Laws Annotated (CLA) (1933); § 2130 CLA (1913). A modified version of the Oregon law still exists in that state. *See* Or. Rev. Stat. § 132.440 (1997) (providing for annual grand jury investigations of and reports on adult and youth correctional facilities).

[38] FINAL REPORT OF THE GRAND JURY FOR THE SPECIAL OCTOBER 1953 TERM, IN THE DISTRICT COURT FOR THE TERRITORY OF ALASKA, DIVISION NUMBER ONE AT KETCHIKAN.

[39] *Id.*

[40] *Id.*

of its investigatory function.[41]  And it was within this context of Territorial practice that the delegates to the Constitutional Convention discussed what role the grand jury should occupy in Alaska's constitutional order.

> **b.      Constitutional Convention proceedings do not support the contention that the Alaska Constitution requires that individuals be permitted to petition the grand jury directly.**

Garber's contention that the Alaska Constitution provides individuals the right to directly access the grand jury is also unsupported by the relevant discussions among the delegates to the Constitutional Convention.  Garber cites several statements by the delegates for support of his position.  The statement that may be perceived as most helpful to his position is Delegate Yule Kilcher's assertion that "[t]he grand jury can be appealed to directly, which is an invaluable right to the citizen."[42]  However, Garber's reliance on Delegate Kilcher's comment leaves out important context.  We consider that context now.

Before statehood, no person in Alaska could be "prosecuted for a felony except upon an indictment by a grand jury," unless the person waived indictment and agreed "to be tried on the information filed by the district attorney."[43]  However, at the time of the Constitutional Convention, "only half the state constitutions provided for grand juries, with the rest using less formal charging procedures."[44]  Therefore the task

---

[41]      We note that Alaska Criminal Rule 6.1(c) contemplates the possibility of concerns found by the Territorial grand jury and allows an individual to raise those issues with the superior court where a conflict of interest or appearance of impropriety is asserted.  *See* Alaska R. Crim. P. 6.1(c)(2).

[42]      *See* 2 Proceedings of the Alaska Constitutional Convention (PACC) 1328 (Jan. 6, 1956).

[43]      2 PACC 1281 (Jan. 5, 1956).

[44]      GERALD A. MCBEATH, THE ALASKA STATE CONSTITUTION:  A REFERENCE GUIDE 45 (1997).

of determining whether and how Alaska would utilize grand juries was delegated to the Preamble and Bill of Rights Committee.[45] As initially written, the Committee's proposed Bill of Rights did not provide that the accused had the right to indictment by grand jury; it simply provided that initiating a felony prosecution could proceed either "by indictment or information."[46]

When the proposal was initially discussed at the Convention, the primary focus of debate was whether the constitution should allow for indictment by grand jury at all.[47] For example, the Chairman of the Bill of Rights Committee, Delegate Dorothy Awes, explained that the Committee had considered "whether the grand jury should be retained," and had decided to keep available at least the option of indicting felony crimes for the "unusual circumstance" where it would be appropriate.[48] Delegate Warren Taylor voiced his opposition to this proposal, arguing that the state "would be better off in the administration of justice" if the grand jury's indictment function were completely eliminated.[49]

Nevertheless, Delegate Edward Davis, an experienced prosecutor and defense attorney in the Territory,[50] proposed an amendment that would make indictment by grand jury a right of the accused that only the accused could waive.[51] He

---

[45] PAPERS OF THE CONSTITUTIONAL CONVENTION, COMM. PROPOSAL NO. 7, FOLDER 310.7 (1955).

[46] *Id*.

[47] *See* 2 PACC 1281-86 (Jan. 5, 1956); 2 PACC 1322-44, 1396-1406 (Jan. 6, 1956).

[48] 2 PACC 1286 (Jan. 5, 1956).

[49] *Id*.

[50] 2 PACC 1325 (Jan. 6, 1956) (Delegate John Hellenthal describing Delegate Taylor as "one of the most successful prosecutors that they ever had in the Third Judicial Division" and "one of the most successful defense attorneys in Alaska").

[51] *Id.* at 1322.

argued that requiring a prosecutor to seek an indictment by grand jury served the useful purpose of allowing "a person against whom criminal charges have been filed . . . to be released by the grand jury [if] there does not appear to be sufficient cause to hold him for trial."[52] And he maintained that allowing the accused to waive the right to indictment and proceed by information adequately addressed concerns regarding lengthy terms of pretrial incarceration while waiting for the grand jury to convene.[53] Several delegates still opposed Delegate Davis's amendment, arguing that in addition to pretrial delay, the financial and administrative costs of assembling grand juries in Alaska would be too great for the new state.[54]

It was in response to the opponents of Delegate Davis's amendment that Delegate Kilcher made his remark regarding the "invaluable right" of the citizen to appeal "directly" to the grand jury.[55] Given this context, his remark is best understood as a statement of support for Delegate Davis's proposal regarding the grand jury's indictment function. And although Delegate Kilcher referenced the grand jury's investigative function in his remarks, and even assuming he had experienced some form of direct access to an investigative grand jury prior to statehood, it is not at all apparent that this experience was shared by the other delegates to the Convention. To the contrary, when the delegates briefly discussed the grand jury's investigative function

---

[52]   *Id.*

[53]   *Id.* at 1322-23.

[54]   *See id.* at 1323-24 (Delegate Seaborn Buckalew arguing that the grand jury would be "costly and expensive" and "an unreasonable burden to put on the state," and Delegate Hellenthal arguing that for "the person evilly disposed when he is accused of a crime, delay is what he wants, delay, delay, delay, and he will get it" if the indictment clause were enacted).

[55]   *Id.* at 1328.

later in the proceedings, no mention was made of an individual right to access the investigative grand jury.[56]

In sum, we are not persuaded that Delegate Kilcher's comment demonstrates that the Convention delegates intended for an individual to be able to directly present information to the grand jury without any facilitation or orderly process. "Our analysis of a constitutional provision begins with, and remains grounded in, the words of the provision itself."[57] "Unless the context suggests otherwise, words are to be given their natural, obvious and ordinary meaning."[58] "We are not vested with the authority to add missing terms or hypothesize differently worded provisions . . . ."[59] The constitutional text guarantees the grand jury's power to investigate; it says nothing about a particular process for citizens to present concerns to the grand jury. Given the constitution's plain text, the absence of any codified individual right to access the grand jury in contemporary law, and the scant discussion of how a grand jury investigation could be initiated, we reject Garber's suggestion that the process established in SCO 1993 is contrary to the delegates' intent. SCO 1993 provides both a process for Alaskans to propose matters for the grand jury to investigate and a safety valve to bypass that process when a conflict of interest may exist. This does not amount to a suspension of the grand jury's power to investigate matters concerning the public welfare or safety.

**3.    Relevant precedent also does not support the conclusion that article I, section 8 prevents the court from adopting Rule 6.1(c).**

Our precedent also contradicts Garber's interpretation of article I, section 8. In *O'Leary v. Superior Court*, we concluded that the anti-suspension clause of article

---

[56]    *Id.* at 1344-1409.

[57]    *Dunleavy v. Alaska Legislative Council*, 498 P.3d 608, 613 (Alaska 2021).

[58]    *Id.*

[59]    *Id.*

I, section 8 "was [meant] to prevent legislation which deprived the grand jury of authority to act."[60] We also noted that Alaska's anti-suspension clause is modeled on section 16 of article I of the Missouri Constitution, which in turn was modeled on section 6 of article I of the New York Constitution.[61] And in support of our holding in *O'Leary*, we cited proceedings from the New York and Missouri constitutional conventions.[62] Each jurisdiction adopted an anti-suspension clause after observing circumstances in which a legislative body in a neighboring state sought to "depriv[e] the grand jury of the power" to investigate.[63]

Consistent with our decision in *O'Leary*, we look to New York precedent here regarding the application of its anti-suspension clause.[64] "New York State has long denied any right of a person to submit information to, or to be heard before, a grand jury."[65] This conclusion has followed from the New York courts' concern about the administrative burdens and potential prejudice to the accused and to other participants in the process that would result from allowing private persons to directly petition the grand jury.[66] Just as New York's anti-suspension clause formed the basis for the Alaska Constitution's anti-suspension clause, New York precedent supports our understanding

---

[60] 816 P.2d 163, 168 (Alaska 1991).

[61] *Id.* at 167 & n.6.

[62] *Id.*

[63] *Id.* (first quoting *Beach v. Shanley*, 465 N.E.2d 304, 310 (N.Y. 1984); and then citing Noah Weinstein & William J. Shaw, *Grand Jury Reports – A Safeguard of Democracy*, 1962 WASH. U. L. Q. 191, 197 n.28 (1962)).

[64] *Id.* at 167 (citing N.Y. Const. art. I, § 6).

[65] *Morgan v. Null*, 117 F. Supp. 11, 15 (S.D.N.Y. 1953) (first citing *People v. Sellick*, 1886 4 N.Y.Crim. R. 329 (1886); then citing *In re Gardiner*, 64 N.Y.S. 760 (N.Y. Gen. Sess. Ct. 1900); *People v. Walsh*, 156 N.Y.S. 366 (N.Y. Sup. Ct. Crim. Term 1915)).

[66] *Id.* at 15-16 (first citing *Sellick*, 4 N.Y.Crim. R. 329; and then citing *In re Gardiner*, 64 N.Y.S. 760).

that article I, section 8 of the Alaska Constitution does not include or anticipate an individual right to directly petition the grand jury.

### D. Garber's Other Arguments Fail.

Garber's other arguments are unsuccessful for a variety of reasons. For instance, Garber's procedural due process argument requires that he articulate a deprivation of a constitutionally protected life, liberty, or property interest.[67] But the interest in directly accessing the grand jury at any given time is not a life, liberty, or property interest to which individual non-grand jurors are entitled. Indeed, Garber seems to agree with this premise when he advocates for a procedure under which individuals may seek to provide information to an investigative grand jury not directly, but through a judge.

Further, Garber's assertions that Alaska Criminal Rule 6.1 violates the constitutional rights of crime victims under article I, section 24, and requirements for criminal administration under article I, section 12, are foreclosed where he has not sought to present information in support of criminal indictments.

Garber's argument that Rule 6.1 violates AS 24.08.200 is similarly without merit. Alaska Statute 24.08.200 states how the Alaska Constitution may be amended.[68] But neither Rule 6.1, nor the recent amendments to that rule, amend the Constitution. Garber also contends that the grand jury is the vehicle by which the legislature investigates "matters concerning public welfare and safety." That too is incorrect. The legislature's power to conduct its own investigations is recognized

---

[67] *See Native Vill. of Kwinhagak v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 542 P.3d 1099, 1119 (Alaska 2024).

[68] *See* Alaska Const. art. XIII, § 1 ("Amendments to this constitution may be proposed by a two-thirds vote of each house of the legislature. The lieutenant governor shall prepare a ballot title and proposition summarizing each proposed amendment, and shall place them on the ballot for the next general election. If a majority of the votes cast on the proposition favor the amendment, it shall be adopted.").

separately in the Alaska Constitution.[69]  Finally, Garber claims that Rule 6.1 contravenes AS 24.08.210.  But AS 24.08.210 provides for the method by which the legislature can disapprove of executive orders — not judicial court rules.

In sum, we conclude that Rule 6.1 and the process by which we amended the rule comport with the Alaska Constitution.

## V.    CONCLUSION

We AFFIRM the superior court's dismissal of Garber's petition.

---

[69]    *See* Alaska Const. art. I, § 7 ("The right of all persons to fair and just treatment in the court of legislative and executive investigations shall not be infringed.").